LMS Packing Slip

# Package ID: 4107564

**Tracking Number:**                    284057684316

**Package Recipient:**                   Ignacio Rivera

**Recipient Company:**              Munich Reinsurance America, Inc.

**Recipient Address:**              555 College Rd E   Princeton NJ 08540-6616 USA

**Phone Number:**                    6092438769

## Package Contents:

| Transmittal Number | Case Number | Title of Action |
|---|---|---|
| 30551985 | D-1-GN-24-009345 | Orange Grove Condominium Association vs. Princeton Excess And Surplus Lines Insurance Company |

**EXHIBIT A**



# CSC

**null / ALL**
Transmittal Number: 30551985
Date Processed: 01/06/2025

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Ignacio Rivera<br>Munich Reinsurance America, Inc.<br>555 College Rd E<br>Princeton, NJ 08540-6616 |
| **Electronic copy provided to:** | Jill Hague |
| **Entity:** | The Princeton Excess And Surplus Lines Insurance Company<br>Entity ID Number 0643930 |
| **Entity Served:** | Princeton Excess And Surplus Lines Insurance Company |
| **Title of Action:** | Orange Grove Condominium Association vs. Princeton Excess And Surplus Lines Insurance Company |
| **Matter Name/ID:** | Orange Grove Condominium Association vs. Princeton Excess And Surplus Lines Insurance Company (16715356) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Travis County District Court, TX |
| **Case/Reference No:** | D-1-GN-24-009345 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 01/02/2025 |
| **Answer or Appearance Due:** | 10:00 am Monday next following the expiration of 20 days after service |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Smith Jadin Johnson, PLLC<br>651-388-0289 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

CITATION
THE STATE OF TEXAS
CAUSE NO. D-1-GN-24-009345

ORANGE GROVE CONDOMINUM ASSOCIATION

, PLAINTIFF(S)

vs.

PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY

, DEFENDANT(S)

TO:    PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY
       BY SERVING ITS COUNSEL OF RECORD SETH I WEINSTEIN
       LEWIS, BRISBOIS, BISGAARD AND SMITH, LLP
       77 WATER STREET STE 2100
       NEW YORK NY 10005

Defendant, In the above styled and numbered cause:
**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."

Attached is a copy of the <u>PLAINTIFF S ORIGINAL PETITION</u> in the above styled and numbered cause, which was filed on <u>NOVEMBER 15, 2024</u> in the <u>353RD DISTRICT COURT</u> of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, <u>NOVEMBER 27, 2024</u>

REQUESTED BY:
ALEXANDER JADEN
7900 XERXES AVE. SOUTH, STE. 2020
BLOOMINGTON, MN 55437



Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street P.O. Box 679003 (78767)
Austin TX 78701

Selina Hamilton, Deputy

RETURN

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at
_____ within the County of _____ on the _____ day
of _____, _____, at _____ o'clock ____M., by delivering to the within named
_____, each in person, a true copy of this citation together with
the <u>PLAINTIFF S ORIGINAL PETITION</u> accompanying pleading, having first attached such copy of such citation to such copy of
pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Notary Public, THE STATE OF TEXAS
D-1-GN-24-009345

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

**SERVICE FEE NOT PAID**

11/15/2024 6:12 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-009345
Rosa Oneal

CAUSE NO. D-1-GN-24-009345

| | | |
|---|---|---|
| **ORANGE GROVE CONDOMINUM ASSOCIATION** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| | § | |
| **PLAINTIFF,** | § | 353RD, DISTRICT COURT |
| | § | |
| **VS.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **PRINCETON EXCESS AND** | § | |
| **SURPLUS LINES INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| | § | |
| | § | |
| **DEFENDANT.** | § | **OF TRAVIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW, Plaintiff Orange Grove Condominium Association ("Orange Grove"), and files this their Plaintiff's Original Petition against Defendant Princeton Excess and Surplus Lines Insurance Company ("PELSIC"), and would respectfully show the Honorable Court as follows:

## DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiffs affirmatively plead that discovery in this matter be conducted under Level 3 of the Texas Rules of Civil Procedure.

## TEX. R. CIV. P. 47(C)(1)

2.    Pursuant to TEX. R. CIV. P. 47(c)(4), Plaintiffs herein seek monetary relief of at least $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees and without considering counterclaims.

## PARTIES AND SERVICE

3.      Plaintiff, Orange Grove Condominium Association, is a Texas non-profit corporation authorized to conduct business in Texas as The Orange Grove, Incorporated, with its principal place of business in Austin, Travis County, TX.

4.      Defendant Princeton Excess and Surplus Lines Insurance Company is a New Jersey corporation authorized to conduct business in the State of Texas.  Defendant may be served with process by delivering the petition and citation to its counsel of record Seth I. Weinstein, Lewis, Brisbois, Bisgaard & Smith, LLP, 77 Water Street, Suite 2100, New York, New York 10005.

5.      Pursuant to the terms of the Policy issued by PELSIC, Defendant will also be served with process by delivering the petition and citation to General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543.

## JURISDICTION AND VENUE

6.      The subject matter in controversy is within the jurisdiction of this Honorable Court. The amount in controversy, exclusive of interest and attorney's fees, exceeds the minimum jurisdictional limits of this Honorable Court.

7.      Venue is proper in Travis County, Texas because Plaintiffs are instituting this suit as covered persons under an All-Risks liability policy covering a claim occurring in Travis County, Texas. *See* TEX. CIV. PRAC. & REM. CODE § 15.032.

8.      Venue in Travis County, Texas is also proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## CONDITIONS PRECEDENT

9.    Plaintiff asserts that all conditions precedent to the bringing of these causes of action have been performed or have occurred prior to the filing of this lawsuit.

10.    At all relevant times, Plaintiff was a covered person under a policy of insurance collectively provided by the Defendant. Plaintiff has complied with all the terms and conditions of the policy prior to bringing this action. Plaintiff will show that at the time of trial of this matter they will offer into evidence a copy of said policy, unless the original of the same is produced by the Defendant at said trial. Plaintiff presented their claim for hail damage coverage pursuant to the contract of insurance with the Defendant. Defendant wrongfully denied the claim, failed to timely make a fair offer upon Plaintiff's demand and/or pay the claim; failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement; and has continued to refuse to pay the coverage owed to Plaintiff. Plaintiff pleads that all condition precedents to filing suit have been complied with.

## FACTUAL BACKGROUND

11.    Plaintiff is the owner and operator of a property generally located at 9001 A-B Trone Circle, Austin, TX 78758 (the "Property").

12.    At all times relevant hereto, the Property was insured under an All-Risks insurance policy issued by Defendant, Policy No. CAUC100309-1 ("the Policy") that insured the Property against wind and hail damage, among other things. A true and correct copy is attached hereto as **Exhibit A**.

13.    On or about September 24, 2023, a hail storm occurred within the Policy coverage period, and the Property sustained wind and hail damage ("the Loss").

14.    Defendant evaluated the Loss, acknowledged there is a loss, acknowledged the loss is covered under the Policy, but failed to identify the proper amount of Loss.

15.     Plaintiff disputes Defendant's Loss evaluation and demanded an appraisal as provided for by the Policy and Texas Insurance Code §2210.574.

16.     Defendant has not agreed to proceed to an appraisal and an appraisal has not taken place.

17.     Defendant failed to comply with the Policy obligations such as identifying the proper amount owed current and owed upon completion of repairs as well as failing to proceed with an unrestricted appraisal of the amount of Loss.

18.     Plaintiff has complied with all Policy requirements, including but not limited to paying premiums, timely reporting the claim, and cooperating with Defendant's Loss investigation such that Defendant is obligated to perform under the contract — the Policy.

19.     Defendant denied payment and repudiated its duty to pay amounts currently owed and amounts due upon completion of repairs.

20.     Plaintiff has provided Defendant with an estimate of the damage due the Loss and on August 29, 2024, demanded appraisal. Nonetheless, Defendant has rejected Plaintiff's claim and not dealt fairly with Plaintiff. Ultimately, Defendant has failed to exercise any real effort towards a consideration or fair valuation of Plaintiff's hail claim. Defendant's repeated delay tactics reveal that it has never had any intention of paying any fair amount of money on Plaintiff's claim. Therefore, Plaintiff is forced to bring this lawsuit against Defendant for its failure to pay under the All-Risks policy.

## CAUSE OF ACTION I

## AN ACTION FOR DECLARATORY RELIEF

21.     Paragraphs 1-20 are incorporated herein by reference.

22.    Pursuant to Tex. Civ. Prac. & Rem. Code § 37.004, et seq., the Plaintiff herein are entitled to a declaratory judgment that:

    a.  Plaintiff is entitled to recover costs related to the Loss from their All Risks policy with the Defendant, as a result of the Loss which occurred on September 24, 2023;

    b.  The Defendant's policy that contained coverage for hail damage was in force and effect at the time of the Loss; and

    c.  Plaintiff also seeks a declaration determining the amount of hail coverage to which Plaintiff is entitled to recover under the insurance policy made the basis of Plaintiff's Petition, after all applicable set-offs and credits, from the Defendant for the following damages which are covered under the insurance policy made the basis of Plaintiff's Petition:

        i.  Actual cash value and the replacement cost value to repair or replace materials damaged by the September 24, 2023, loss event with materials of like kind and quality for like use and all necessary repairs required to meet the prevailing building code requirements,

        ii.  statutory damages,

        iii.  reasonable and necessary attorneys' fees,

        iv.  pre-judgment and post-judgment interest as allowed by law, and

        v.  costs of suit

23.    Pursuant to Tex. Civ. Prac. & Rem. Code § 37.009, Plaintiff herein are entitled to an award of their actual damages, costs of court and reasonable and necessary attorneys' fees incurred in bringing this action for declaratory relief.

## CAUSE OF ACTION II

## ALTERNATIVE ACTION FOR DECLARATORY RELIEF

24.     Paragraphs 1-20 are incorporated herein by reference.

25.     Pursuant to Tex. Civ. Prac. & Rem. Code § 37.004, et seq., the Plaintiff herein are entitled to a declaratory judgment that:

    a.  Plaintiff is entitled to recover costs related to the Loss from their All-Risks policy with the Defendant, as a result of the Loss which occurred on September 24, 2023;

    b.  The Defendant's All-Risks policy contained coverage for hail damage and was in force and effect at the time of the Loss; and

    c.  The All-Risks policy issued by Defendant contained an appraisal clause which explicitly requires an appraisal of the loss upon a dispute over the value or amount of the loss and upon either party making a written demand for an appraisal of the loss.

    d.  There is a real justiciable controversy between the Plaintiff and the Defendant over the extent to which the subject Policy provides indemnity and coverage for damages, both direct and consequential, relating to the Loss.

    e.  Plaintiff has demanded an appraisal under the All-Risks policy issued by Defendant and the provisions of the subject Policy must be construed against Defendant.

    f.  Appraisal is the appropriate procedure to resolve the disputed amount of Loss and will determine:

        i.  Actual cash value and the replacement cost value to repair or replace materials damaged by the September 24, 2023, loss event with materials of

like kind and quality for like use and all necessary repairs required to meet the prevailing building code requirements.

g.  All coverage issues that remain after appraisal panel has issued an award as to the disputed amount of loss shall be decided by the Court, including a declaration that Plaintiff is entitled to recover the following damages which are covered under the insurance policy made the basis of Plaintiff's Petition:

    i.   statutory damages,

    ii.   reasonable and necessary attorneys' fees,

    iii.   pre-judgment and post-judgment interest as allowed by law, and

    iv.   costs of suit

26.    Pursuant to Tex. Civ. Prac. & Rem. Code § 37.009, an award of their actual damages, costs of court and reasonable and necessary attorneys' fees incurred in bringing this action for declaratory relief.

## CAUSE OF ACTION III

## VIOLATIONS OF § 541.060 AND § 542.003 TEXAS INSURANCE CODE

27.    Paragraphs 1-20 are incorporated herein by reference.

28.    Plaintiff is entitled to recover under the Texas Insurance Code for Unfair Claim Practices (Section 541.060) and Unfair Claim Settlement Practices (Section 542.003). From the time Plaintiff presented their claim to the Defendant, Defendant's liability to pay the claim in accordance with the terms of the insurance policy was reasonably clear. After having received notice that the Plaintiff's losses are clearly covered by the insurance policy made the basis of Plaintiff's Petition, all as set out in the preceding paragraphs of this petition, Defendant engaged

in several unfair settlement practices, as enumerated and defined as unfair or deceptive, including but not limited to the following:

    a. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim once Defendant's liability became reasonably clear (Sec. 541.060(a)(2)(A);

    b. Refusing to pay a claim without conducting a reasonable investigation with respect to the claim (Sec. 541.060(a)(7); and

    c. Not attempting in good faith to affect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear (Sec. 542.003(b)(4).

    d. Plaintiff will show that these acts and omissions on Defendant's part were done knowingly, that is with an actual awareness of the falsity, unfairness, or deception of the conduct described. Factually, Defendant has ignored and unreasonably discounted undisputed facts.

29.    In short, Defendant has refused to pay its limits, or any other reasonable amount in this case, because it simply does not want to. It has no reasonable basis for this failure. Consequently, Plaintiff requests that the trier of fact award Plaintiff additional damages of up to three times the sum of actual damages suffered because Defendant's conduct was performed knowingly and intentionally.

## CAUSE OF ACTION IV

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

30.    Paragraphs 1-20 are incorporated herein by reference.

31.    From the time Plaintiff presented their claim to the Defendant, Defendant's liability to pay the claim in accordance with the terms of the insurance policy was reasonably clear. Despite

being no basis whatsoever on which a reasonable insurance company would have relied to deny payment of Plaintiff's claim, Defendant refused to accept the claim and pay all benefits to Plaintiff as the policy required. Plaintiff will show that Defendant failed to conduct a reasonable and proper investigation of the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid paying a valid claim. Defendant thereby breached its duty to deal fairly and in good faith with Plaintiff. Defendant's breach was a proximate cause of the losses, expenses, and damages suffered by Plaintiff. Defendant's conduct was performed knowingly and intentionally.

## ATTORNEY'S FEES AND INTEREST

32.    Paragraphs 1-31 are incorporated herein by reference.

33.    Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code and applicable sections of the Texas Insurance Code, Plaintiff is entitled to recover the additional sum of 18 percent per annum and attorneys' fees on Plaintiff's damages as described in this petition until the day before the judgment for Plaintiff is signed and entered because Defendant's conduct was performed knowingly and intentionally. Plaintiff was required to engage the services of Smith Jadin Johnson, specifically attorney Alexander Jadin, whose hourly billing rate is $475/hour. Plaintiff, therefore, seeks reimbursement of reasonable attorneys' fees, as much as Plaintiff has been required to employ the undersigned attorneys to file and prosecute this suit. Pursuant to the Texas Civil Practice and Remedies Code and the Texas Insurance Code, Plaintiff hereby makes this written presentment of their claim for attorney fees.

## DAMAGES

34.    As a direct result of the referenced conduct, Plaintiff has suffered actual damages, all of which they are entitled to recover. Plaintiff is entitled to recover hail losses stemming from

the storm on September 24, 2023, including actual cash value and the replacement cost value to repair or replace materials damaged with materials of like kind and quality for like use and all necessary repairs required to meet the prevailing building code requirements. Plaintiffs are also entitled to recover statutory damages for the violations of Texas Insurance Code.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that they have judgment against Defendant Princeton Excess and Surplus Lines Insurance Company for their actual cash value, replacement cost, statutory damages, reasonable and necessary attorneys' fees, pre-judgment and post-judgment interest as allowed by law, costs of suit and all other relief to which Plaintiff may show themselves entitled.

Respectfully submitted this 15th day of November, 2024,

**SMITH JADIN JOHNSON, PLLC**

7900 Xerxes Avenue South, Suite 2020
Bloomington, MN 55437
Telephone: (651) 388-0289
Facsimile: (612) 235-7927

By: /s/ *Alexander M. Jadin*
Alexander M. Jadin
Texas State Bar No. 24110651
ajadin@sjjlawfirm.com
Travis M. Hilton
Texas State Bar No. 24126304
thilton@sjjlawfirm.com

**ATTORNEY FOR PLAINTIFF**



**COMMUNITY ASSOCIATION
UNDERWRITERS**

Let Us Introduce Ourselves

We wanted to take a moment to introduce ourselves and provide some key information and contacts in case you have any immediate questions or need any help going forward.

Your Community Association Underwriters policy includes equipment breakdown as part of your total insurance program. The Hartford Steam Boiler Inspection and Insurance Company (HSB) in partnership with Community Association Underwriters of America, Inc. (CAU) provides inspection services under their insurance program.

**In most States, the law requires that Boilers and Pressure Vessels of certain sizes must be inspected. HSB performs these inspections for CAU customers at no charge. If your Boiler or Pressure Vessel needs an inspection, call our Inspection Hotline to schedule a free inspection. If you are not sure if your equipment needs an inspection, call the Hotline and they will be able to assist you in the determination.**

We are very excited for the opportunity to provide you with this important service and look forward to working closely with you.

Inspection Scheduling

There are two ways to contact HSB to schedule an inspection or ask questions. They are:

   **Telephone:** Inspection Hotline: (800) 333-4677

   **Email:** NSCINSP_HOTLINE@hsb.com

Please provide the following:
- Identify that you are with the CAU Insurance Program
- Provide Insurance Policy Number
- Your Contact information
- Location address of the equipment
- Type of equipment

# Your Equipment Inspections Provider

© 2018 The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved. This document is intended for information purposes and does not modify or invalidate any of the provisions, exclusions, terms or conditions of the policy and endorsements. For specific terms and conditions, please refer to the coverage form.

EXHIBIT A



# Orange Grove Condominium Association

**Needed Items**

Please forward the following items to us by 12/11/2022:

- A signed CAU application
- Please confirm no aluminum wiring or remediated aluminum wiring
- To bind coverage, we'll need updated property loss history to confirm no new claims - current losses are dated 8/24/22
- If successful, please amend the CAU app to reflect the binding effective date and include the inspection contact information

Ed. 02/19                                                          Account: 54344

EXHIBIT A

The Princeton Excess and Surplus Lines Insurance Company
555 College Road East, Plaza II
Princeton, NJ 08543-5241
Licensed Surplus Lines Producer
License #: 2174223
Community Association Underwriters of America Services, Inc.
2 Caufield Place
Newtown, PA 18940

# Residential Condominium Association Insurance Policy

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a **4.85 %** tax on gross premium.

## DECLARATIONS A: GENERAL POLICY INFORMATION

- Coverage applies only when a limit of insurance is shown in these declarations. These declarations are summaries, only. Please refer to the coverage forms and applicable endorsements for complete information.
- In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance stated in this policy.

### Named Insured Name and Mailing Address

Orange Grove Condominium Association
c/o Prism Realty Management, Inc.
P.O. Box 1689
Cedar Park, TX 78630

| Policy Number | | |
|---|---|---|
| | Annual Premium: | $39,340.00 |
| | Surplus Lines Tax: | $1,907.99 |
| | Stamping Fee: | $29.51 |
| CAUC100309-1 | Total: | $41,277.50 |
| | 25% Minimum Earned Premium applies | |

| Policy Period | Effective Date* | Expiration Date* |
|---|---|---|
| | 11/15/2022 | 11/15/2023 |

*12:01 AM Standard Time at your premises address

## DIRECTORY OF DECLARATIONS

| Declarations | Page |
|---|---|
| A  General Policy Information | 1 |
| B  Directory of Applicable Forms | 2 |
| C  1. Addresses and Description of Buildings and "Units" | 2 |
| D  1. Community Property | 3 |
|    2. "Units" | 3 |
|    3. Additional Community Property | 4 |
|    4. Natural Outdoor Property | 4 |
| E  Property Consequential Loss Coverages | 5 |
| F  Crime Coverages | 5 |
| G  Liability Coverages | 6 |

**Symphony Risk Solutions, LLC**
**2425 N. Central Expressway #900**
**Richardson, TX 75080**


CAU
COASTAL ADVANTAGE

| Countersigned (Date) | By (Authorized Representative) |
|---|---|
| 11/17/2022 |  |

Residential Condominium Association Insurance Policy

## DIRECTORY OF DECLARATIONS

| Declarations | Page |
|---|---|
| H   Claims Made Liability Coverages | 6 |

## DECLARATIONS B: DIRECTORY OF APPLICABLE FORMS

| Form Number and Edition Date | Form Title |
|---|---|
| CAU 4000 01/18 | Residential Condominium Association Insurance Policy |
| CAU 4040 01/18 | Environmental Impairment Liability Coverage Part |
| CAU 4101 01/20 | Signature Page |
| CAU 4111 07/19 | Lead Exclusion |
| CAU 4113 01/18 | Cancellation Minimum Earned Premium |
| CAU 4114 01/18 | Service of Process Endorsement |
| CAU 4130 01/18 | Employee Dishonesty - Community Manager |
| CAU 4144 06/19 | Wind or Hail Percentage Deductible Per Building |
| CAU 4172 01/18 | Additional Claims Expenses |
| CAU 4188 01/18 | Power Failure or Interruption Coverage - Sump Pumps |
| CAU 4542 12/19 | Texas Notice |
| CAU 4930 01/18 | Cap on Losses from "Certified Acts of Terrorism" |
| CAU 4985 12/20 | Disclosure Pursuant to Terrorism Risk Insurance Act |

## DECLARATIONS C:   1.  ADDRESSES AND DESCRIPTION OF BUILDINGS AND "UNITS"

### 1. ADDRESSES AND DESCRIPTION OF BUILDINGS AND "UNITS"



Coverage is provided for twenty-two two-story frame condominium buildings consisting of seventy-two residential units. The premises is located at 9001A-B, 9003A-B, 9005A-B, 9007A-B Parkfield Drive, 8906A-D, 8904A-C, 8902A-D, 8900A-D, 8901A-D, 8903A-C, 8905A-C, 8907A-D, 8909A-C, 8911A-B, 8913A-D, 8915A-D, 8917A-D, 8900A-D, 8902A-D, 8906A-D, 8908A-D, 8915A-B Trone Circle, Austin, Travis County, TX 78758.

EXHIBIT A
Policy # CAUC100309-1

# Residential Condominium Association Insurance Policy

## DECLARATIONS D: PROPERTY DIRECT COVERAGES

- Unless otherwise indicated, all Limits apply on a per occurrence basis.
  1. **COMMUNITY PROPERTY**
  2. **"UNITS"**
  3. **ADDITIONAL COMMUNITY PROPERTY**
  4. **NATURAL OUTDOOR PROPERTY**

### 1. COMMUNITY PROPERTY

| Causes of Loss | Limit of Insurance | Valuation | * Deductible |
|---|---|---|---|
| Special including "Equipment Breakdown" | Guaranteed Replacement Cost | Guaranteed Replacement Cost | $10,000 Per Occurrence |

See 'Directory of Applicable Forms' for additional deductibles
\* In addition to the deductible which may result under D.2.

| Community Buildings | Community Structures | Community Personal Property |
|---|---|---|
| All buildings described in Declarations C.1. including:<br>• Residences | All of the items listed below are covered when not forming part of, or located within, or on a building.<br>• "Swimming Pools"<br>• Statues<br>• Outdoor fixtures<br>• Pool and Pump Houses<br>• Signs<br>• Roads, drives, walkways and other paved surfaces<br>• Recreation fixtures and courts<br>• Antennas and satellite dishes<br>• Sheds<br>• Temporary seasonal structures<br>• Shelters<br>• Cabanas<br>• Freestanding walls (excluding retaining walls)<br>• Fountains<br>• Fences and gates<br>• Gazebos<br>• Gate houses<br>• Mailboxes<br>• Light and flag poles<br>• Benches | • Equipment<br>• Tools<br>• Supplies and furnishings<br>• "Money" and "Securities"<br>• Non-motorized watercraft<br>• "Computer equipment", and "Media"<br>• "Valuable papers and records"<br>• Accounts receivables |

### 2. "UNITS": All real property comprising the "unit" as initially installed in accordance with your association's original plans and specifications, or like kind and quality of such property.

| Causes of Loss | Limit of Insurance | Valuation | * Deductible |
|---|---|---|---|
| Ice Damming | Guaranteed Replacement Cost | Guaranteed Replacement Cost | $10,000 Per "Unit" |

See 'Directory of Applicable Forms' for additional deductibles
\* In addition to the deductible which may result under D.1.

CAU 4001 10/18          Policy # CAUC100309-1          Page 3 of 6

# Residential Condominium Association Insurance Policy

## 3. ADDITIONAL COMMUNITY PROPERTY

| Causes of Loss | Valuation | Deductible |
|---|---|---|
| Special including "Equipment Breakdown" | Replacement Cost | None |

| Covered Property | Limit of Insurance | |
|---|---|---|
| **Additional Structures:** <br> Bridges, Docks, Retaining Walls, Piers, Bulkheads and Wharves | $10,000 | |
| **Newly Acquired Buildings and Structures** <br> Buildings and Structures as described in D.1. above that you acquire at locations other than the location described in C.1. | $250,000 | |
| **Newly Acquired Community Personal Property** <br> Community personal property while at locations other than the "premises" | $250,000 | |
| **Newly Conveyed Buildings and Structures** <br> New buildings and structures built at the location described in C.1. | $250,000 | |
| **"Personal Effects"** <br> Personal Property of your directors and "officers" or "employees" while acting in the scope of their duties as such. | $5,000 <br> $15,000 | Per Person <br> Per Occurrence |
| **Personal Property of Others** <br> Personal property of others temporarily in your care, custody or control. | $5,000 <br> $15,000 | Per Person <br> Per Occurrence |
| **Off "Premises" Community Personal Property** <br> Community personal property while temporarily at other locations within the "coverage territory". | $50,000 | |
| **Community Personal Property In Transit** <br> Community personal property while on conveyances being operated between points in the "coverage territory". | $50,000 | |
| **"Fine Arts"** <br> Paintings, Pictures, Prints, Etchings, Sculptures, Art Glass, "Jewelry", "Furs", and other bona fide works of art of rarity, historical value or artistic merit. | $15,000 <br> $50,000 | Per Item <br> Per Occurrence |

## 4. NATURAL OUTDOOR PROPERTY

| Causes of Loss | Valuation | Deductible |
|---|---|---|
| "Specified Causes of Loss" | Replacement Cost | None |

| Covered Property | Limit of Insurance | |
|---|---|---|
| **Trees, Lawns, Shrubs, Plants** | $1,000 | Maximum Per Tree, Plant, Lawn or Shrub |
| | $20,000 | Per Occurrence |

CAU 4001 10/18

# Residential Condominium Association Insurance Policy

## DECLARATIONS E: PROPERTY CONSEQUENTIAL LOSS COVERAGES

Coverages apply only as a consequence of direct physical loss or damage to "covered property" caused by or resulting from a covered Cause of Loss.
- Unless otherwise indicated, all Limits apply on a per occurrence basis
- No Deductible applies to Property Consequential Loss Coverages
  1. **ORDINANCE OR LAW**
  2. **LOSS OF INCOME**
  3. **SUPPLEMENTARY PAYMENTS & REMOVAL COVERAGES**

### 1. ORDINANCE OR LAW

| Covered Property | Consequential Loss Coverage | Limit of Insurance | Valuation |
|---|---|---|---|
| Community Buildings, "Units" | Undamaged Portion | Guaranteed Replacement Cost | Guaranteed Replacement Cost |
| Community Buildings, "Units" | Demolition Costs | $300,000 | Actual Loss Sustained |
| Community Buildings, "Units" | Increased Cost of Construction | $300,000 | Increased Replacement Cost |

### 2. LOSS OF INCOME

| | Limit of Insurance | Valuation |
|---|---|---|
| Community Income and Maintenance Fees and Assessments; Extra Expense; Rents; Community Income; Increased Period of Restoration; other temporary operation expenses. | Actual Loss Sustained | Actual Loss Sustained |

### 3. SUPPLEMENTARY PAYMENTS & REMOVAL COVERAGES

| | Limit of Insurance | | Valuation |
|---|---|---|---|
| • Removal of Fallen Trees | $10,000 | | Actual Loss Sustained |
| | $1,000 | Maximum per Tree | Actual Loss Sustained |
| • "Pollutant" Cleanup and Removal | $25,000 | per continuous 12 month period | Actual Loss Sustained |
| • Property Removal | $300,000 | | Actual Loss Sustained |
| • Monetary Reward | $5,000 | | 10% of Paid Claim |
| • Debris Removal | $300,000 | | Actual Loss Sustained |
| • Fire Department Service Charges | $10,000 | | Actual Loss Sustained |
| • Fire Extinguisher Recharge | $1,000 | | Actual Loss Sustained |

## DECLARATIONS F: CRIME COVERAGES

- Unless otherwise indicated, all Limits apply on a per occurrence basis

| Valuation | Deductible |
|---|---|
| Actual Loss Sustained | None |

| Covered Property | Causes of Loss | Limit of Insurance |
|---|---|---|
| All "Covered Property" | "Employee Dishonesty" | $150,000 Combined Limit |
| All "Covered Property" | "Computer Fraud" | |
| "Covered Instruments" | "Depositors Forgery" | |

EXHIBIT A
Policy # CAUC100309-1

# Residential Condominium Association Insurance Policy

## DECLARATIONS G: LIABILITY COVERAGES

Liability     Limits of Insurance apply as:
- Indemnity payments for claims or "suits" seeking damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies.

| Coverage | Limit of Insurance | Type of Limit |
|---|---|---|
| "Bodily Injury" And "Property Damage" | $1,000,000 | Per "Occurrence" |
| Products / Completed Operations | $1,000,000<br>$1,000,000 | Per "Occurrence"<br>Annual Aggregate |
| "Personal Injury" & "Advertising Injury" | $1,000,000 | Per "Offense" |
| Property Damage Legal Liability–Real Property | $1,000,000 | Per "Occurrence" |
| "Hired Auto" and "Nonowned Auto" | $1,000,000 | Per "Occurrence" |
| Medical Payments | $5,000 | Per Accident |
| Garage and Parking Area Legal Liability | | |
| Comprehensive Coverage | $500 | Deductible Applies Per "Occurrence" |
| | $25,000 | Per "Occurrence" Limit |
| Collision Coverage | $500 | Deductible Applies Per "Occurrence" |
| | $25,000 | Per "Occurrence" Limit |

## DECLARATIONS H: CLAIMS MADE LIABILITY COVERAGES

### ENVIRONMENTAL IMPAIRMENT LIABILITY - CLAIMS MADE AND REPORTED

Limits of Insurance apply as:
- Indemnity payments and "defense costs" for "claims" seeking damages arising out of "pollution conditions".

| Coverage | Limit of Insurance | |
|---|---|---|
| **Environmental Impairment Liability** | $500,000 | Each "Loss" |
| | $500,000 | Aggregate |
| | $5,000 | Retained Limit Each "Loss" |

Retroactive Date: _____ NONE _____

This insurance does not apply to "loss" from "pollution conditions" which took place before the Retroactive Date.

Optional Extended Reporting Period: _____ 1 year _____

The premium for the Optional Extended Reporting Period is: _____ $400 plus any applicable taxes and surcharges _____

---

**NOTICE**
*Any emergency arising out of "pollution conditions" covered by Environmental Impairment Liability Coverage should be reported immediately to the on call 24 hour hotline at 1-800-432-2481, administered by XL Specialty Claims, a division of the XL Insurance Companies.*

---

EXHIBIT A
Policy # CAUC100309-1

## Environmental Impairment Liability Coverage Part

Throughout this policy, the words, "you" and "your" refer to the named insured shown in the "Declarations". "We", "us" and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings. Refer to IX. DEFINITIONS SECTION.

THIS ENVIRONMENTAL IMPAIRMENT LIABILITY COVERAGE PART PROVIDES CLAIMS MADE AND REPORTED COVERAGE. COVERED DEFENSE EXPENSES ARE PART OF "LOSS" AND ARE NOT PAYABLE BY US IN ADDITION TO THE LIMIT OF LIABILITY, BUT ARE PAYABLE WITHIN THE LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS, THEREBY REDUCING THE LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS.

The word insured means any person or organization qualifying as such under III. ENVIRONMENTAL IMPAIRMENT LIABILITY WHO IS AN INSURED SECTION.

This Environmental Impairment Liability Coverage Part along with VIII. GENERAL LIABILITY CONDITIONS SECTION and XVI. DEFINITIONS SECTION of the policy contain all our obligations regarding this coverage. We have no other obligation unless the policy, that this Environmental Impairment Liability Coverage Part is part of, is amended accordingly.

I.  **ENVIRONMENTAL IMPAIRMENT LIABILITY COVERAGE SECTION**

A.  **ENVIRONMENTAL IMPAIRMENT LIABILITY**

We shall pay "loss" the insured becomes legally obligated to pay as the result of "claim(s)" first made against the insured during the "policy period". Insurance is provided by this Environmental Impairment Liability Coverage Part for any "claim(s)" or "suit(s)" made or brought in the "coverage territory" and:

1. Arising out of "pollution conditions" on, at, under or emanating from the locations(s) stated in the "Declarations"; and,

2. Reported to us in accordance with VI.C. ENVIRONMENTAL IMPAIRMENT LIABILITY CONDITIONS SECTION; and,

3. Reported to us during the "policy period" or where applicable, the extended reporting period in accordance with V. ENVIRONMENTAL IMPAIRMENT LIABILITY EXTENDED REPORTING PERIOD SECTION.

B.  **DEFENSE AND PAYMENT**

1. Even if the allegations are groundless, false or fraudulent, we will have the right and duty to defend against any "claim(s)" or "suit(s)".

2. "Defense costs" are subject to the following:

    a.  We may investigate any "claim(s)" or "suit(s)" at our discretion.

    b.  Our right and duty to defend ends when we have exhausted the limit of insurance in the payment of "loss".

    c.  Subject to I.B.3., we may, at our option, give you our consent to defend any "claim(s)" or "suit(s)"

    d.  Subject to I.B.3., no "defense costs" will be incurred or settlements made without our consent, which will not be unreasonably withheld. We will not be liable for any settlements or "defense costs" to which we have not consented in writing.

3. Subject to the following, if the limits of insurance stated in the "Declarations" has been or soon will be exhausted, we will transfer to you control of any existing defense:

    a.  We will notify you in writing as soon as reasonably possible. We will advise you that our duty to defend either has terminated or is about to terminate subject to the payment of the limit of insurance. We will advise you that we will no longer handle the defense of any "claim(s)" or "suit(s)" reported to us after the date we provide this notice.

    b.  We will take immediate and appropriate steps to transfer control to you of any existing defense at the time of or prior to exhaustion of the limit of insurance. You will agree to reimburse us for any reasonable costs we incur in connection with the transfer of the defense.

    c.  We will take appropriate steps necessary to defend the "claim(s)" or "suit(s)" during the transfer of the defense and to attempt to avoid any unfavorable legal action provided that the insured cooperates with the transfer.

# Environmental Impairment Liability Coverage Part

    d.   The exhaustion of the limit of insurance by the payment of "loss" will not be affected by our failure to comply with any of the provisions of this section.

  4.  Even if we initially defend or initially pay to defend any "claim(s)" or "suit(s)", we may later determine that there is no coverage for "claim(s)" or "suit(s)". In that event, we have the right to reimbursement for the "defense costs" we incur from the date we notify you, in writing, of our:

    a.   Determination that coverage does not apply;

    b.   Reservation of our rights to terminate the defense or payment for the defense; and

    c.   Intention to seek reimbursement of our "defense costs".

## II.  ENVIRONMENTAL IMPAIRMENT LIABILITY EXCLUSIONS SECTION

This insurance does not apply to "loss" based upon or arising out of any of the following:

### A.  KNOWN CONDITIONS

"Pollution conditions" existing prior to the inception of this policy that are known to any insured and that were not disclosed to us in writing in the application or related materials prior to the inception of this policy.

### B.  MULTIPLE DAMAGES/FINES/PENALTIES

Civil, administrative or criminal fines or penalties, assessments, punitive, exemplary or multiplied damages. However, this exclusion does not apply to punitive, exemplary or multiplied damages where insurance coverage is allowable by law.

### C.  "EMPLOYERS LIABILITY"

"Bodily injury" to:

  1.  An "employee" of an insured arising out of and in the course of:

    a.   Employment by the insured; or

    b.   Performing duties related to the conduct of the insured's business; or

  2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of subparagraph 1. above.

This exclusion applies:

  1.  Whether an insured may be liable as an employer or in any other capacity; and,

  2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

### D.  WORKERS' COMPENSATION AND SIMILAR LAWS

Any obligation of any insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### E.  CONTRACTUAL LIABILITY

Liability of others assumed by any insured under any contract or agreement unless the liability would exist in the absence of a contract or agreement.

### F.  INSURED'S PROPERTY/BAILEE LIABILITY

"Property damage" to property owned, leased or operated by or in the care, custody or control of any insured, even if such "property damage" is incurred to avoid or mitigate "loss" which may be covered under this policy.

### G.  VEHICLES

The ownership, maintenance, use, operation, "loading or unloading", or entrustment to others of any automobile, aircraft, watercraft, rolling stock or all transportation, including any cargo carried thereby, beyond the legal boundaries of locations shown in the "Declarations".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Environmental Impairment Liability Coverage Part

**H. DIVESTED PROPERTY**

"Pollution conditions" on, at, under or emanating from the locations shown in the "Declarations" where the actual discharge, dispersal, release, seepage, migration or escape of "pollution conditions" begins subsequent to the time such locations are sold, given away or abandoned by the first named insured or condemned.

**I. NUCLEAR HAZARD**

Under any liability coverage, to "bodily injury", "property damage" or "remediation expense" based upon or arising out of:

1. Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear "waste" from the processing or reaction of nuclear fuel;

2. The radioactive, toxic, explosive or other "hazardous properties" of any explosive nuclear assembly or nuclear component thereof;

3. The existence, required removal or abatement of Naturally Occurring Radioactive Material, including but not limited to radon;

4. High-level radioactive "waste" (spent nuclear fuel or the highly radioactive "waste" produced if "spent fuel" is reprocessed), uranium milling residues and "waste" with greater than specified quantities of elements heavier than uranium; or

5. Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this clause 7. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2,

6. Waste as defined in Title 10 Code of Federal Regulations, Part 61.2; and/or

7. Material regulated by the United States Nuclear Regulatory Commission or an Agreement State under a Type A, B or C Specific License of Broad Scope as defined in Title 10 Code of Federal Regulations, Part 33.11.

   Including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

**J. PRODUCTS LIABILITY**

Goods or products manufactured, sold, handled, distributed, altered or repaired by the insured or by others trading under the insured's name including, with regard to such goods or products, any container, any failure to warn and any reliance on a representation or warranty made at any time. However, this exclusion applies only if the "pollution conditions" occur away from the locations owned, operated or leased by the insured and after physical possession of such has been relinquished to others.

**K. INTENTIONAL ACTS**

"Pollution conditions" that result from intentional disregard of, or the deliberate, willful or dishonest noncompliance by any insured with any statute, regulation, ordinance, order, administrative complaint, notice letter or instruction from, by or on behalf of any governmental agency or representative.

**L. HOSTILE ACTS**

Any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether or not war be declared), civil war, rebellion, revolution insurrection or military or usurped power.

**M. ROT, MOLD, MILDEW OR OTHER FUNGI**

Based upon or arising out of the exposure to, required removal or abatement of rot, mold, or mildew or other fungi, regardless of whether such rot, mold, or mildew or other fungi, ensues from any cause or condition on, at, under or emanating from or to the "premises", including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage related to any of these.

**N. "UNDERGROUND STORAGE TANKS"**

The past or current existence of any "underground storage tank (USTs)" on, at or under any location listed in the "Declarations", but only if the existence of the "UST" is known to any insured.

This exclusion does not apply to any "UST" described in the "Underground storage tanks" and Associated Piping Schedule or storage tank(s) situated in an underground area (such as a basement or cellar) if the storage tank is situated upon or above the surface of the floor.

O.  **"UNITS" AND PRIVATE STORAGE AREAS**

"Pollution conditions" in, at or emanating from "units" or private storage areas regardless of where the "bodily injury" or "property damage" occurs.

However, this exclusion does not apply to the "defense costs" provided under I.B.2. DEFENSE AND PAYMENT.

P.  **LEAD BASED PAINT AND ASBESTOS**

Based upon or arising out of the existence, required removal or abatement of lead based paint or asbestos in any form, in any building or structure, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials.

However, this exclusion does not apply to a "claim(s)" for "bodily injury" and related "defense costs" resulting from lead-based paint or asbestos in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust, and asbestos containing materials on, at under or emanating from the locations(s) stated in the "Declarations".

Q.  **RETROACTIVE DATE**

Based upon or arising out of any "pollution conditions" that commenced prior to the Retroactive Date, if any, shown in the "Declarations" which includes any dispersal, migration or further movement of the "pollution conditions" on or after the Retroactive Date stated in the "Declarations".

R.  **COMMUNICABLE DISEASES**

Based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

III.  **ENVIRONMENTAL IMPAIRMENT LIABILITY WHO IS AN INSURED SECTION**

A.  **Each of the following is an insured:**

1.  You and any "subsidiary" named in the "Declarations";

2.  Any person who has been, now is, or shall become a duly elected or appointed director or trustee, a duly elected or appointed officer, an "employee", or "committee member", whether or not salaried, and any of your members acting at the direction of your board of directors on your behalf in a voluntary capacity;

3.  The estate of any insured in 2. above who is deceased; and

4.  Legal representatives or assigns of any insured in 1. or 2. above who is insolvent, incompetent, or bankrupt.

5.  Any person, other than your "employee", or any organization, while acting as your community manager.

B.  **None of the following is an insured:**

Any community manager, director, "officer", "employee", "committee member", shareholder, owner, or unit owner who is or was affiliated in any capacity with your builder, developer or sponsor, is not an insured for any "claim(s)" or "suit(s)" however alleged or pleaded, seeking damages for "bodily injury" or "property damage" arising from, related to or caused, in whole or in part, by faulty, inadequate, defective or negligent design or construction of any property, including any allegation in such "claim(s)" or "suit(s)" of failure to maintain, repair or replace such property.

IV.  **ENVIRONMENTAL IMPAIRMENT LIABILITY LIMITS OF INSURANCE SECTION**

A.  **The limits of insurance shown in the "Declarations" and the provisions of this section determine the most we will pay for "loss" regardless of the number of:**

1.  insureds and additional insureds;

2.  "claim(s)" made or "suit(s)" brought; or

3.  persons or organizations making "claim(s)" or bringing "suit(s)".

B.  **LIMITS OF INSURANCE ARE SUBJECT TO THE FOLLOWING:**

1.  The each "policy year" limit is the most we will pay for "loss" covered by this Environmental Impairment Liability Coverage Part.

2.  Subject to 1. above:

    a.   the each "loss" limit is the most we will pay for damages because of all "loss" arising out of the same or related "pollution conditions" at any one location; and,

    b.   all "loss" from one or more "claim(s)" arising out of the same or related "pollution conditions" and reported to us, in writing, over more than one "policy period" shall be considered a single "loss". Such "loss" will be subject to the limits of insurance in effect at the time of the first reported "pollution conditions" will apply.

3.   The insured's retained limit in effect at the time the "claim(s)" is first reported shall be deducted from the amount of each "loss". You must bear the retained limit and you are not permitted to insure it without our written consent.

4.   We shall pay for a "loss" only in excess of such retained limit up to the applicable limits of insurance. We may pay any part or all of the insured's retained limit to settle a "claim(s)" or "suit(s)" and you agree to promptly reimburse us for the part of the retained limit paid by us.

## V.  ENVIRONMENTAL IMPAIRMENT LIABILITY EXTENDED REPORTING PERIOD SECTION

We will provide an Automatic Extended Reporting Period as described in V.A. below and, if you purchase it, an Optional Extended Reporting Period described in V.B. in the event of any "termination of coverage".

Notwithstanding anything to the contrary above, the Automatic Extended Reporting Period and Optional Extended Reporting Period do not apply when this policy is terminated for fraud, misrepresentation, or non-payment of premium or where the insured has purchased other insurance to replace this policy.

### A.  AUTOMATIC EXTENDED REPORTING PERIOD

1.   The Automatic Extended Reporting Period starts at the end of the "policy period" and lasts for 90 days. This extension is subject to the other provisions of this policy and applies to "claim(s)" first made against the insured during the 90 days immediately following the end of the "policy period".

2.   The Automatic Extended Reporting Period is provided without additional charge.

3.   The Automatic Extended Reporting Period applies only if no subsequent insurance you purchase applies to the "claim(s)", or would apply but for the exhaustion of its limit of insurance.

4.   The Automatic Extended Reporting Period may not be canceled.

### B.  OPTIONAL EXTENDED REPORTING PERIOD

1.   If you purchase the Optional Extended Reporting Period, it will start immediately at the end of the "policy period", whether the policy is canceled or nonrenewed by either you or us, and will last for one year. The Automatic Extended Reporting Period is merged into the Optional Extended Reporting Period and is not in addition to this period.

2.   The cost for the Optional Extended Reporting Period is shown in the "Declarations".

3.   We will provide the Optional Extended Reporting Period if the first Named Insured makes a written request to us for it which we receive within 30 days after the end of the "policy period".

4.   The Optional Extended Reporting Period will not take effect unless the additional premium is paid when due. If that premium is paid when due, the Optional Extended Reporting Period may not be canceled.

5.   You may not construe our quotation of different terms and conditions as a nonrenewal.

### C.  Extended Reporting Periods are subject to the following conditions:

1.   A "claim(s)" first made against the insured during the Extended Reporting Period will be deemed to have been made against the insured on the last day of the "policy period", provided that the "claim(s)" is for "loss" from "pollution conditions" which took place before the end of the "policy period" but not before any applicable retroactive date.

2.   Extended Reporting Periods do not extend the "policy period" or change the scope of coverage provided.

3.   Extended Reporting Periods do not reinstate or increase the limits of liability applicable to any "claim(s)" to which this Environmental Impairment Liability Coverage Part applies.

4.   If this Environmental Impairment Liability Coverage Part is canceled and you elect to purchase the Optional Extended Reporting Period Endorsement:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

a. Any return premium due you for the cancellation will be credited to the premium due for the Optional Extended Reporting Period Endorsement; and

b. Any additional premium due to us for the period the policy was in force must be fully paid before any payments can be applied to the premium due for the Optional Extended Reporting Period Endorsement.

## VI. ENVIRONMENTAL IMPAIRMENT LIABILITY CONDITIONS SECTION

The Environmental Impairment Liability Coverage Part is subject to the following conditions.

### A. LEGAL ACTION AGAINST US

1. No person or organization has a right under this Environmental Impairment Liability Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit(s)" against any insured; or

   b. To sue us on this Environmental Impairment Liability Coverage Part unless all of its terms have been fully complied with.

2. A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "loss" or "defense costs" that are not payable under the terms of this Environmental Impairment Liability Coverage Part or that are in excess of the applicable limit of insurance.

### B. BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligation under this Environmental Impairment Liability Coverage Part.

### C. DUTIES IN THE EVENT OF "CLAIM(S)" OR "SUIT(S)"

Notwithstanding anything to contrary herein, the failure to perform these duties will impair your rights under this Environmental Impairment Liability Coverage Part.

1. You must see to it that we are notified as soon as practicable of any "loss", "claim(s)" or "suit(s)". To the extent possible, notice should include:

   a. How, when and where the "loss", "claim(s)" or "suit(s)" came about;

   b. The names and addresses of any persons involved; and

   c. The nature of any resulting harm or damages.

2. In the event of oral notification, you agree to furnish a written report as soon as practicable.

3. If a "claim(s)" or "suit(s)" is made against or received by an insured, you must:

   a. Immediately record the specifics of the "claim(s)" or "suit(s)" and the date received;

   b. Notify us as soon as practicable; and

   c. Provide written notice of the "claim(s)" or "suit(s)".

4. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim(s)" or "suit(s)";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement, or defense of the "claim(s)" or "suit(s)"; and

   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which this insurance may apply.

5. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our consent. This provision does not apply to emergency response costs. Emergency response costs are any reasonable costs that need to be incurred immediately where any delay in response would cause significant harm to human health or the environment. If such emergency occurs, the insured will notify us immediately.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT 1

# Environmental Impairment Liability Coverage Part

### D. REPRESENTATIONS AND SEVERABILITY

1. In granting coverage under this Environmental Impairment Liability Coverage Part to any one of the insureds, we have relied upon the declarations and statements in the application, including submitted materials and, if this is a renewal application, all such previous applications for which this coverage is a renewal. Declarations and statements are the basis of coverage and will be considered as incorporated in and constituting part of the Environmental Impairment Liability Coverage Part.

2. The application for coverage will be construed as a separate application for coverage by each of the insureds.

3. Except with respect to the limits of insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom "claim(s)" is made or "suit(s)" is brought.

### E. NEWLY CREATED OR ACQUIRED "SUBSIDIARIES"

1. If any "subsidiary", created or acquired by the Named Insured after the inception of this Environmental Impairment Liability Coverage Part, qualifies as a not-for-profit organization under the provision of the Internal Revenue Code and would have been included as an insured under III.A. ENVIRONMENTAL IMPAIRMENT LIABILITY WHO IS AN INSURED SECTION, such "subsidiary" will be included subject to:

   a. The giving of written notice of such creation or acquisition to us as soon as practical, but in no event more than 120 days following such creation or acquisition; and

   b. The giving of any underwriting information and the payment of any additional premium required by us.

2. If any "subsidiary", created or acquired by the Named Insured after the inception of this policy, does not qualify as a not-for-profit organization under the provisions of the Internal Revenue Code, such "subsidiary" will not be included until the insured has:

   a. Given written notice of such creation or acquisition together with any underwriting information which may be required; and

   b. Received written approval from us and paid any additional premium required.

### F. CONSOLIDATION OR MERGER

In the event that the Named Insured acquires by merger, or consolidates with, or is merged into or acquired by any other organization after the inception of this policy, immediate written notice thereof will be given to us together with such information as we may require. You will pay any additional premium required by us.

### G. OTHER INSURANCE

Subject to IV. ENVIRONMENTAL IMPAIRMENT LIABILITY LIMITS OF INSURANCE SECTION, this insurance will be in excess of the retained limit stated in the "Declarations" and any other valid and collectible insurance available to the insured whether such other insurance is stated to be primary, pro-rata, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of insurance.

## VII. ENVIRONMENTAL IMPAIRMENT LIABILITY ADDITIONAL CHANGES

The policy this Environmental Impairment Liability Coverage Part is attached to is changed as follows:

### A. The following defined terms of XVI. DEFINITIONS SECTION of the policy are amended to also apply to the Environmental Impairment Liability Coverage Part:

"Agreed settlement";

"By-product material";

"Committee member";

"Declarations";

"Employers Liability";

"Hazardous properties";

"Leased workers";

"Nuclear facility";

"Nuclear material";

"Nuclear reactor";

"Policy period";

"Pollutants";

"Source material";

"Special nuclear material";

"Spent fuel";

"Subsidiary(ies)";

"Suit(s)";

"Temporary workers";

"Unit"; and

"Waste";

B. **The following defined terms are added to XVI. DEFINITIONS SECTION of the policy:**

1. **"Bodily injury"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means bodily injury, sickness, disease or building related illness, mental anguish, emotional distress, or shock sustained by any person, including death resulting therefrom, caused by "pollution conditions".

2. **"Claim(s)"** (ENVIRONMENTAL IMPAIRMENT LIABILITY)

   a. means the assertion of a legal right alleging liability or responsibility on the part of the insured, arising out of "pollution conditions", and shall include but not be limited to a lawsuit, petition, order, or government and/or regulatory action, filed against the insured; and,

   b. includes "remediation expense" resulting from "pollution conditions" which are:

      (1) first discovered by any insured; and,

      (2) reported to us, during the "policy period" or applicable extended reporting period.

3. **"Coverage territory"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means the United States and its territories and possessions.

4. **"Defense costs"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means legal costs, charges and expenses, including expert fees, incurred in the investigation, adjustment, settlement and defense of "claim(s)" and "suit(s)". "Defense Costs" do not include the time and expenses incurred by the insured in assisting in the investigation or resolution of "claim(s)" and "suit(s)" including but not limited to the costs of the insured's in-house counsel, salary charges of regular employees or officials of the insured and fees and expenses of supervisory counsel retained by the insured.

5. **"Employee"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) includes "leased worker", "temporary worker", director, officer, "committee member", or community manager.

6. **"Extended reporting period"** means the Automatic Extended Reporting or, where applicable, the Optional Extended Reporting Period, described in V. ENVIRONMENTAL IMPAIRMENT LIABILITY EXTENDED REPORTING PERIOD SECTION.

7. **"Loss"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means monetary judgment, award or settlement of compensatory damages arising from:

   a. "bodily injury";

   b. "property damage";

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Environmental Impairment Liability Coverage Part

    c.    "remediation expense"; and,

    d.    "defense costs".

8.    **"Policy year"** (LIABILITY) means the period of one year following the inception of this policy or any anniversary thereof, or if the time between such inception or any anniversary and the termination of the policy is less than one year, such lesser period.

9.    **"Pollution conditions"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means the discharge, dispersal, release, seepage, migration or escape of smoke, vapors, soot, fumes, acids, alkalis, electromagnetic fields, toxic chemicals, hazardous substances, liquids or gases, waste materials, including medical, infectious and pathological wastes, or other irritants, contaminants or "pollutants" into or upon land or structures thereupon, the atmosphere or any watercourse or body of water including groundwater.

10.    **"Property damage"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means:

    a.    Physical injury to or destruction of tangible property, including the personal property of third parties, including the loss of use thereof; or,

    b.    Loss of use of such property that has not been physically injured or destroyed; or,

    c.    Diminished third party property value; or,

    d.    "Natural Resource Damage", caused by any "pollution conditions"

"Property damage" does not include "Remediation expense".

11.    **"Remediation expense"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means expenses incurred for or in connection with the investigation, monitoring, removal, disposal, treatment or neutralization of "pollution conditions" to the extent required by any Federal, State or Local Laws, Regulations or Statutes enacted to address "pollution conditions".

"Remediation Expense" also includes punitive, exemplary, or multiplied damages, where insurable by law.

12.    **"Termination of coverage"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means cancellation or nonrenewal of the Environmental Impairment Liability Coverage Part by either party.

13.    **"Natural resource damage"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means physical injury to or destruction of, as well as the assessment of such injury or destruction, including the resulting loss of value of land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act 16 U.S.C. 1801 et. seq.), any State, Local or Provincial government, any foreign government, any Native American tribe or, if such resources are subject to a trust restriction on alienation, any member of a Native American tribe.

14.    **"Underground storage tank"** (ENVIRONMENTAL IMPAIRMENT LIABILITY) means any stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:

    (i)    constructed primarily of non-earthen materials; and

    (ii)    designed to contain any substance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This signature page replaces the Signature Page which is a part of the following policies:

    CAU 4000 - Coastal Advantage Residential Condominium Association Insurance Policy
    CAU 4010 - Coastal Advantage Cooperative Apartment Insurance Policy
    CAU 4020 - Coastal Advantage Homeowners Association Insurance Policy
    CAU 4030 - Coastal Advantage Office Condominium Association Insurance Policy

# SIGNATURE PAGE

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE COVERAGE FORM, DECLARATIONS AND ENDORSEMENTS, IF ANY.

In Witness Whereof, The Princeton Excess and Surplus Lines Insurance Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of The Princeton Excess and Surplus Lines Insurance Company.

*Michael Kerner*

Michael Kerner
President

*Robin Willcox*

Robin Willcox
Secretary

The Princeton Excess and Surplus Lines Insurance Company
555 College Road East, Plaza II
Princeton, NJ 08543-5241

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ■ Lead Exclusion

This endorsement modifies insurance provided by the following policies:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**A.** **III. PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION, B. EXCLUSIONS** is amended by the addition of the following exclusion:

**LEAD**

We will not pay for loss or damage caused by, based on, attributable to, related to, or in any manner and at any time arising out of:

1.  The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, exposure, ownership, sale or disposal of lead, lead fibers, lead dust, or material containing lead.

2.  Any error or omission in testing, failure to test, supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with lead, lead dust, lead fibers, or material containing lead.

**B.** **XI. GENERAL LIABILITY EXCLUSIONS** is amended by the addition of the following exclusion:

**LEAD**

"Bodily injury" or "property damage" caused by, based on, attributable to, related to, or in any manner and at any time arising out of:

1.  The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, exposure, ownership, sale or disposal of lead, lead fibers, lead dust, or material containing lead.

2.  Any error or omission in testing, failure to test, supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with lead, lead dust, lead fibers, or material containing lead.

All other terms and conditions of the Policy remain unchanged by this endorsement.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

■ **Cancellation Minimum Earned Premium**

This endorsement modifies insurance provided by the following:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

In consideration of the premium for which this insurance is issued, in the event of cancellation of this insurance by the Insured, a minimum of 25% of the premium as of inception shall become earned, any conditions of this insurance to the contrary notwithstanding.

Failure of the Insured to make timely payments of premium shall be considered a request by the Insured for the Insurer to cancel this insurance. In the event of such cancellation by the Insurer for non payment of premium, the minimum premium shall be due and payable; provided however, such non payment cancellation shall be rescinded if the Insured remits the full premium by the cancellation date on the Notice of Cancellation.

All other terms and conditions of this policy remain unchanged.

# The Princeton Excess and Surplus Lines Insurance Company

---

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

This Policy is subject to the following:

## SERVICE OF PROCESS ENDORSEMENT

This endorsement specifies that:

We designate the Superintendent of Insurance, Insurance Commissioner, Director of Insurance, or other officer specified by law, pursuant to the laws of the State where this policy is delivered, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in the State in which this policy is delivered, by, or on behalf of, the Named Insured or any beneficiary hereunder arising out of this Policy. We designate the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543 as the person to whom the said officer is authorized to mail such process or true copy thereof.

All other terms and conditions remain unchanged.

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

■  **Employee Dishonesty - Community Manager**

This endorsement modifies insurance provided by the Property Coverage Part of the following:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

Definition 17. "Covered employee" (PROPERTY) of **XVI. DEFINITIONS SECTION** is deleted and replaced by the following:

17.  **"Covered employee"** (PROPERTY) means:

    a.  Any natural person:

        (1)  While in your service (and for 30 days after termination of service);

        (2)  Whom you compensate directly by salary, wages or commissions; and

        (3)  Whom you have the right to direct and control while performing services for you.

    b.  Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you. However, any such person is excluded while having care and custody of property outside the "premises". .

    c.  Any natural person who is a duly elected or appointed director, trustee, "officer", "committee" volunteer or "committee member", whether salaried or not, and any other person acting on behalf or at the direction of an "officer" or board of directors of your Association with the exception of the developer, sponsor, or builder when acting in a capacity as the developer, sponsor, or builder.

    d.  Other than your "employee", any person or any organization while acting as your community manager.

But covered employee does not include

    a.  Any "employee" immediately upon discovery by:

        (1)  You; or

        (2)  Any of your "officers" and directors not in collusion with the employee, director, "officer" or board member; of any dishonest act committed by that employee, director, "officer" or board member whether before or after being hired or appointed by you.

All other terms and conditions of this Policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ■  Wind or Hail Percentage Deductible Per Building

This endorsement modifies insurance provided by the Property Coverage Part of the following:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**A.  VI. PROPERTY CONDITIONS SECTION, K. DEDUCTIBLE** is amended by the addition of the following:

   **WIND OR HAIL DEDUCTIBLE**

   **1.**   We will not pay for loss or damage in any one occurrence which is caused by or results from wind or hail, until the amount of loss or damage exceeds the deductible indicated below.

   The applicable WIND OR HAIL DEDUCTIBLE is:

   ☐  1% Deductible

   1 % of the replacement cost value of the "covered property" at policy inception.

   ☒  2% Deductible

   2% of the replacement cost value of the "covered property" at policy inception.

   ☐  Other % Deductible

   ___ of the replacement cost value of the "covered property" at policy inception.

   **2.**   The WIND OR HAIL DEDUCTIBLE is calculated separately for, and applies separately to, the total replacement cost of each building, community personal property at each building, each structure, and community personal property in the open that sustains loss or damage.

   **3.**   A MINIMUM DEDUCTIBLE OF $50,000 PER OCCURRENCE applies but only for a wind occurrence that is designated as a "named storm".

   "Named storm" as used under this endorsement means a weather-related event involving wind that has been assigned a formal name and/or number by the National Hurricane Center, National Weather Service, World Meteorological Association, or any other generally recognized scientific or meteorological association that provides a formal name and/or number for public use and reference. A "named storm" includes storm, tropical storm, tropical depression, hurricane, cyclone, typhoon, atmospheric disturbance, or any other weather phenomena. A "named storm" begins at the time a Watch or Warning is issued by any of the aforementioned entities for the area in which the affected premises are located, and ends 72 hours after the termination of the last Watch or Warning issued for that area by the same entity.

**B.  III. PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS, B. EXCLUSIONS, 1.f. WATER** is amended by the addition of the following:

   Nothing in this endorsement shall be construed to afford coverage for any loss or damage that is excluded under the terms of this exclusion.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ■  Additional Claims Expenses

This endorsement modifies insurance provided by the Property Coverage Part of the following:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**V.  PROPERTY SUPPLEMENTARY PAYMENTS SECTION**  is amended to include the following:

**E.   ADDITIONAL CLAIM EXPENSES**

Subject to the limit of insurance shown below, we will pay for the reasonable and necessary expenses you incur for your community manager to assist you in preparing and certifying details from a COVERED CAUSE OF LOSS to "covered property" when the cost to repair or replace damage to "covered property" exceeds $250,000. No deductible applies to this coverage.

We will not pay:

1.  Expenses incurred when your community manager is acting as your public or independent adjuster, or as your contractor;

2.  Expenses billed by or payable to an independent or public adjuster; or

3.  Expenses incurred by you under VI. PROPERTY CONDITIONS SECTION, N. APPRAISAL.

The limit of insurance below is the most we will pay and does not increase any other coverage limits of insurance.

**LIMIT OF INSURANCE**

$2,500 per occurrence

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ■ Power Failure or Interruption Coverage - Sump Pumps

This endorsement modifies insurance provided by the Property Coverage Part of the following:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**IV.   PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION**  is amended by the addition of the following:

**POWER FAILURE OR INTERRUPTION COVERAGE − SUMP PUMP**

Subject to the limit of insurance and valuation shown below, we will pay for direct physical loss or damage to "covered property" caused by or resulting from water which backs up through, overflows, or is otherwise discharged from a sump well, if the back up, overflow or discharge results from a power failure, or power interruption to a sump pump or related equipment. No deductible applies to this coverage.

**LIMIT OF INSURANCE**                                         **VALUATION**

$15,000 per occurrence                                         Replacement Cost

All other terms and conditions of this Policy remain unchanged.

# Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company. If you don't, you may lose your right to appeal.

**The Princeton Excess and Surplus Lines Insurance Company**
To get information or file a complaint with your insurance company:

> **Call: William Lockwood at 1-609-243-4757**
> **Toll-free: 1-800-305-4954**
> Email: wlockwood@munichreamerica.com
> Mail: 555 College Road East, Princeton, NJ 08543

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:

> **Call with a question: 1-800-252-3439**
> File a complaint: www.tdi.texas.gov.
> Email: ConsumerProtection@tdi.texas.gov
> Mail: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

# ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros. Si no lo hace, podría perder su derecho para apelar.

**The Princeton Excess and Surplus Lines Insurance Company**

Para obtener información o para presentar una queja ante su compañía de seguros:

**Llame a: Wiliam Lockwood at 1-609-243-4757**
**Teléfono gratuito: 1-800-305-4954**
Correo electrónico: wlockwood@munichreamerica.com
Dirección postal: 555 College Road East, Princeton, NJ 08543

**El Departamento de Seguros de Texas**

Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

**Llame con sus preguntas al: 1-800-252-3439**
Presente una queja en: www.tdi.texas.gov.
Correo electrónico: ConsumerProtection@tdi.texas.gov
Dirección postal: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ■   Cap on Losses from "Certified Acts of Terrorism"

This endorsement modifies insurance provided by the following policies:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**A.   The following is applicable to the Property Coverage Part:**

   **1.   CAP ON CERTIFIED TERRORISM LOSSES**

      With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

   **2.   APPLICATION OF OTHER EXCLUSIONS**

      The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Property Coverage Part, such as losses excluded by the III.B.1.d. NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS exclusions, III.B.1.e. "WAR" AND MILITARY ACTION exclusion or III.B.2.e. POLLUTION exclusion.

**B.   The following is applicable to the Liability Coverage Part and Environmental Impairment Liability Coverage Part:**

   **1.   CAP ON CERTIFIED TERRORISM LOSSES**

      With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

   **2.   APPLICATION OF OTHER EXCLUSIONS**

      The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under these Coverage Parts, such as losses excluded by the "WAR" exclusion, HOSTILE ACTS exclusion, NUCLEAR ENERGY exclusion, NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS exclusions or the POLLUTION exclusion.

**C.   The following definition is added to XVI. DEFINITIONS SECTION:**

**"Certified act of terrorism"** (PROPERTY, GENERAL LIABILITY and ENVIRONMENTAL IMPAIRMENT LIABILITY) means an act that is certified by the Secretary of the Treasury in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in that Act for a "certified act of terrorism" include the following:

   **1.**   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.**   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**D.**   If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# ■ Disclosure Pursuant to Terrorism Risk Insurance Act

This endorsement modifies insurance provided by the following policies:

COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE COOPERATIVE APARTMENT INSURANCE POLICY
COASTAL ADVANTAGE HOMEOWNERS ASSOCIATION INSURANCE POLICY
COASTAL ADVANTAGE OFFICE CONDOMINIUM ASSOCIATION INSURANCE POLICY

**This policy includes coverage for Certified Acts of Terrorism. Please refer to the applicable charge below.**

SCHEDULE

| | |
|---|---|
| | **PREMIUM** |
| **Terrorism  (Certified Acts)** | **$348** |

### A. DISCLOSURE OF PREMIUM

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

### B. DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage, as shown in the Schedule above, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### C. CAP ON INSURER PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of this Policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# NEW BUSINESS INVOICE

**PRODUCER NAME & ADDRESS**

Symphony Risk Solutions, LLC
2425 N. Central Expressway #900
Richardson, TX 75080

S133

**INSURED NAME AND MAILING ADDRESS**

Orange Grove Condominium Association
c/o Prism Realty Management, Inc.
P.O. Box 1689
Cedar Park, TX 78630

| ACCOUNT # | POLICY # | INSURANCE COMPANY | LINE OF BUSINESS | INVOICE DATE |
|---|---|---|---|---|
| 54344 | CAUC100309-1 | PESLCA | Coastal Advantage | 11/17/2022 |

THE INSURED HAS THE OPTION OF PAYING THE POLICY PREMIUM OF $41,277.50 BY 12/15/2022 OR CHOOSING OUR INSTALLMENT PLAN. IF THE INSURED CHOOSES TO BE BILLED IN INSTALLMENTS, A FIRST PAYMENT OF $13,757.50 IS DUE BY 12/15/2022. THERE WILL BE AN INSTALLMENT CHARGE OF $0.00 PER INSTALLMENT.

## INSTALLMENT SCHEDULE

| INSTALLMENT | DUE DATE | INSTALLMENT AMOUNT | INSTALLMENT CHARGE | TOTAL INSTALLMENT |
|---|---|---|---|---|
| DOWN PAYMENT | 12/15/2022 | $13,757.50 | $0.00 | $13,757.50 |
| 1. | 01/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| 2. | 02/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| 3. | 03/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| 4. | 04/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| 5. | 05/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| 6. | 06/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| 7. | 07/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| 8. | 08/15/2023 | $3,440.00 | $0.00 | $3,440.00 |
| | | $41,277.50 | $0.00 | $41,277.50 |

**NOTE: THIS INVOICE DOES NOT REFLECT ANY PAYMENTS ALREADY MADE. THIS INSTALLMENT SCHEDULE IS SUBJECT TO CHANGE IN THE EVENT OF AN ENDORSEMENT OR REVISION TO THE POLICY.**

REMINDER: PAYMENT IS DUE WITHIN 30 DAYS OF THE POLICY EFFECTIVE DATE.

PLEASE MAKE CHECKS PAYABLE TO COMMUNITY ASSOCIATION UNDERWRITERS. REMIT THE TOTAL PREMIUM AMOUNT.

**IT IS THE PRODUCER'S RESPONSIBILITY TO COLLECT THIS DOWN PAYMENT.**

If you have any questions, please call (800) 228-1930.

| ACCOUNT # | PESLCA POLICY # | EFFECTIVE DATE | EXPIRATION DATE | PREMIUM | STATE TAXES AND CHARGES | TOTAL PREMIUM |
|---|---|---|---|---|---|---|
| 54344 | CAUC100309-1 | 11/15/2022 | 11/15/2023 | $39,340.00 | $1,937.50 | $41,277.50 |

INSURED NAME AND MAILING ADDRESS

**Orange Grove Condominium Association
c/o Prism Realty Management, Inc.
P.O. Box 1689
Cedar Park, TX 78630**

PAY ELECTRONICALLY AT:
https://cauinsure.epaypolicy.com

MAKE CHECK PAYABLE AND MAIL TO:
Community Association Underwriters
P.O. Box 1100
Newtown, PA 18940

EXHIBIT A

# COASTAL ADVANTAGE

---

# RESIDENTIAL CONDOMINIUM

---

# ASSOCIATION

---

# INSURANCE

---

# POLICY



**COASTAL ADVANTAGE**

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "Us", and "Our" refer to the company providing this insurance.
Other words and phrases that appear in quotation marks have special meaning. Refer to XVI. DEFINITIONS SECTION.

©Copyright by Community Association Underwriters of America, Inc.

**Includes copyrighted material of Insurance Services Office, Inc. with its permission**

EXHIBIT A

CAU 4000 01/18

## Signature Page

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE COVERAGE FORM, DECLARATIONS AND ENDORSEMENTS, IF ANY.

In Witness Whereof, The Princeton Excess and Surplus Lines Insurance Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of The Princeton Excess and Surplus Lines Insurance Company.

*Michael Kerner*

Michael Kerner

President and Chief Executive Officer

*Ignacio Rivera*

Ignacio Rivera

Deputy General Counsel and Assistant Secretary

The Princeton Excess and Surplus Lines Insurance Company

555 College Road East, Plaza II

Princeton, NJ 08543-5241

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

CAU 4000 01/18

# Table of Contents

**COASTAL ADVANTAGE RESIDENTIAL CONDOMINIUM ASSOCIATION INSURANCE POLICY**

**PROPERTY COVERAGE PART**

I. PROPERTY DIRECT COVERAGES SECTION ................................................................. 1

II. PROPERTY CONSEQUENTIAL COVERAGES SECTION .................................................. 4

III. PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION .............. 6

IV. PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION.............................. 12

V. PROPERTY SUPPLEMENTARY PAYMENTS SECTION ................................................. 15

VI. PROPERTY CONDITIONS SECTION ........................................................................... 16

**LIABILITY COVERAGE PART**

VII. GENERAL LIABILITY COVERAGES SECTION ............................................................. 26

VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION ....... 27

IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION ................................................ 28

X. GENERAL LIABILITY DEFENSE OF "SUIT" SECTION.................................................... 28

XI. GENERAL LIABILITY EXCLUSIONS SECTION ............................................................. 29

XII. GENERAL LIABILITY WHO IS AN INSURED SECTION ................................................ 38

XIII. GENERAL LIABILITY CONDITIONS SECTION ............................................................ 40

XIV. GENERAL LIABILITY LIMITS OF INSURANCE SECTION ............................................. 43

**COMMON POLICY CONDITIONS**

XV. COMMON POLICY CONDITIONS SECTION ................................................................ 45

**DEFINITIONS**

XVI. DEFINITIONS SECTION ............................................................................................ 48

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

**Property Coverage Part**

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "us", and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XVI. DEFINITIONS SECTION.

## I.   PROPERTY DIRECT COVERAGES SECTION

We will pay for direct physical loss of or damage to "covered property" caused by or resulting from any COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS. Coverage is provided only when a limit of insurance is shown in the "Declarations".

Unless otherwise specified, "covered property" must be located within the "coverage territory".

Unless otherwise specified in this section, all EXCLUSIONS under III.B. EXCLUSIONS apply.

Coverage is also provided for "covered property" which is not damaged but which must be removed and replaced in order to repair "covered property" which is damaged by a COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS.

### A.  COMMUNITY PROPERTY

Unless otherwise specified, coverage is provided for the following property if it is on or within 1,000 feet of the "premises". However, the following property does not include any property which is covered, or would be covered except for the exhaustion of the applicable limits of insurance, under I.B ADDITIONAL COMMUNITY PROPERTY.

#### 1.  COMMUNITY BUILDINGS AND STRUCTURES

Coverage is provided for:

##### a.  COMMUNITY BUILDINGS

Buildings that are described as such in the "Declarations" and used in whole or in part as:

Residences, clubhouses, meeting centers, boat houses, attached garages and carports, detached garages and carports, buildings housing sewage treatment facilities, and buildings housing heating and air conditioning plants.

##### b.  COMMUNITY STRUCTURES

Structures not described in the "Declarations" and used in whole as:

Cabanas, recreation courts and fixtures, pool houses, gates, gate houses, storage sheds, shelters, mailboxes, gazebos, pump houses, fences, walkways, roadways, other paved surfaces, outdoor fixtures, outdoor "swimming pools", flagpoles, light poles, fountains, outside statues, detached signs, temporary seasonal structures, and freestanding walls, other than retaining walls.

Buildings and structures not specified in a. and b. above are covered only when specifically described in the "Declarations".

Buildings and structures include: structural glass, pipes, wires, conduits, ducts, chutes, flues, and utilities; heating, ventilating and cooling systems; sprinkler, fire protection and security systems; permanently installed machinery and equipment and other mechanical elements, all whether above or below ground; balconies; indoor or rooftop "swimming pools"; porches; decks; patios; attached signs; outdoor: satellite dishes, radio, television and other antennas including their wiring, masts, footings, foundations, moorings and towers; and other property not within "units".

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Property Coverage Part

Coverage includes the following property not within "units": additions, alterations, and structural repairs, whether or not complete; finishes, coatings, and coverings of walls, floors, and ceilings; and permanently installed appliances and fixtures.

## 2. "UNITS"

"Units" are covered only when a limit of insurance is shown in the "Declarations" for either one or both of the following:

### a. ORIGINAL SPECIFICATIONS

Any property included in "units" which was initially installed in accordance with your condominium's original plans and specifications, or a replacement of like kind and quality of such property.

### b. ADDITIONAL INSTALLATIONS

Improvements and betterments made to "units". This coverage is in addition to the coverage provided in I.A.2.a. ORIGINAL SPECIFICATIONS, above.

## 3. COMMUNITY PERSONAL PROPERTY

Coverage is provided for property which satisfies all of the following:

a. Owned by you or leased by you for which you have a contractual responsibility to insure.

b. Used in connection with the "premises".

c. Not permanently attached to or installed in any building or structure.

d. Comprised of:

(1) Tools, construction materials, building supplies, indoor and outdoor furnishings, decorations, fixtures, equipment, appliances, machinery, window treatments, and other community personal property.

(2) Materials, equipment, supplies and temporary structures used for making additions, alterations, or structural repairs to any building or structure.

(3) Your interest in the labor, materials, or services furnished or arranged by you on personal property of others.

(4) "Computer equipment" and "media".

(5) "Valuable papers and records".

(6) Accounts receivables.

(7) "Money" and "securities".

## B. ADDITIONAL COMMUNITY PROPERTY

Unless otherwise specified, coverage is provided for the following property if it is on or within 1,000 feet of the "premises".

### 1. BRIDGES, BULKHEADS, DOCKS, PIERS, RETAINING WALLS, AND WHARVES

Coverage is provided for your bridges, bulkheads, docks, piers, retaining walls, and wharves.

### 2. NATURAL OUTDOOR PROPERTY

Coverage is provided for your live trees, plants, shrubs, and lawns.

Coverage is specifically limited to only the following Causes of Loss:

a. Fire;

b. Lightning;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

 c. Explosion;

 d. Vehicle;

 e. Aircraft;

 f. Riot;

 g. Civil commotion;

 h. Vandalism; and

 i. "Theft".

**3. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY**

Your Newly Acquired, Conveyed, or Transferred Property is covered for up to 90 days during the reporting period specified in VI.M. REPORTING REQUIREMENTS. Coverage is provided as follows:

**a. NEWLY ACQUIRED BUILDINGS AND STRUCTURES**

Buildings and structures you acquire at locations other than the "premises". These buildings and structures must be used for purposes similar to those described in the "Declarations".

**b. NEWLY CONVEYED OR TRANSFERRED BUILDINGS AND STRUCTURES**

Your separate, new buildings and structures built on the "premises".

**c. NEWLY ACQUIRED COMMUNITY PERSONAL PROPERTY**

Your newly acquired community personal property while at locations owned, leased, or operated by you other than the "premises".

**4. "FINE ARTS"**

Coverage is provided for your "fine arts".

**5. "PERSONAL EFFECTS"**

Coverage is provided for "personal effects" owned by your directors, "officers", "committee members" or "employees" while acting in the scope of their duties as such.

**6. PERSONAL PROPERTY OF OTHERS**

Coverage is provided for personal property of others in your care, custody, or control.

Limitation 3. of III.C. LIMITATIONS does not apply to this coverage.

**C. SPECIFIED PROPERTY OFF "PREMISES" AND IN TRANSIT**

Coverage under I.A. COMMUNITY PROPERTY, and I.B. ADDITIONAL COMMUNITY PROPERTY, is extended to losses occurring while not on or within 1,000 feet of the "premises" as follows:

**1. OFF "PREMISES"**

Coverage is provided while the property is temporarily at other locations within the "coverage territory".

**2. IN TRANSIT**

Coverage is provided while the property is on conveyances being operated between points in the "coverage territory".

**D. PROPERTY NOT COVERED**

"Covered property" does not include:

1. Animals.

2. Contraband or property in the course of illegal transportation or trade.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Property Coverage Part

3. Land, including land on which property is located, and growing crops.

4. Water.

5. Self-propelled vehicles and machines including aircraft, "autos", and watercraft, that satisfy any of the following:

    a. Are licensed or registered for use on public roads; or,

    b. Are operated principally away from the "premises"; or,

    c. Are held for sale.

    Except rowboats or canoes out of water at the "premises".

6. Dams.

7. Tunnels.

8. Unit owners', guests', or tenants' personal property.

## II. PROPERTY CONSEQUENTIAL COVERAGES SECTION

**Unless otherwise specified, coverages apply as a consequence of direct physical loss or damage to "covered property" caused by or resulting from a COVERED CAUSE OF LOSS for which a limit of insurance is shown for such "covered property" in the "Declarations". The coverages in this section are only provided when limits of insurance are shown in the "Declarations".**

### A. MAINTENANCE FEES AND ASSESSMENTS

We will pay for all maintenance fees and assessments due to you from unit owners which you have been unable to collect during the "period of restoration".

### B. COMMUNITY INCOME

We will pay for the loss of community income, including loss of rents or loss of lease payments, due to the suspension of your operations during the "period of restoration". Community income does not include maintenance fees and assessments.

### C. EXTRA EXPENSE

We will pay for the extra expense, specified below, you incur to continue normal community operations during the "period of restoration".

Extra expense includes:

1. Any extra expense to avoid or minimize the suspension of business and to continue normal community operations:

    a. At the "premises"; or

    b. At replacement premises or at temporary locations, including:

        (1) Relocation expenses; and

        (2) Costs to equip and operate the replacement or temporary locations.

2. All reasonable expenses for transportation and storage with regard to II.E.2. PROPERTY REMOVAL.

3. Reasonable costs to repair or replace any property to the extent it reduces the amount of loss that would have been payable under II.C. EXTRA EXPENSE.

This coverage does not apply to any additional expenses of individual unit owners, tenants, and community managers.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

### D. ORDINANCE OR LAW COVERAGE

With respect to property described under I.A.1. COMMUNITY BUILDINGS AND STRUCTURES and I.A.2. "UNITS" that has sustained covered direct physical damage, coverage is provided for the following:

#### 1. COVERAGE FOR LOSS TO THE UNDAMAGED PORTION OF THE BUILDING

We will pay for the loss in value of the undamaged portions of the same building as a consequence of enforcement of, or compliance with, an ordinance or law that requires demolition of undamaged parts of the same building.

#### 2. DEMOLITION COST COVERAGE

We will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged building.

#### 3. INCREASED COST OF CONSTRUCTION COVERAGE

We will pay the increased cost to:

a. Repair or reconstruct damaged portions of the same building; and/or

b. Reconstruct or remodel undamaged portions of the same building whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

#### 4. INCREASED PERIOD OF RESTORATION COVERAGE

When coverage provided by 1., 2., or 3. above applies, we will extend the coverage provided under II.A. MAINTENANCE FEES AND ASSESSMENTS, II.B. COMMUNITY INCOME and II.C. EXTRA EXPENSE to include the amount of actual and necessary loss you sustain during the increased period of restoration of normal community operations.

These coverages under II.D. are only provided if the ordinance or law:

a. Regulates the demolition, construction, or repair of buildings or structures, or establishes zoning or land use requirements at the described "premises"; and

b. Is in force at the time of loss.

These coverages under II.D. will apply only in response to the minimum requirements of the ordinance or law. Losses or costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered. Loss or costs incurred to repair pre-existing code violations, whether or not you were given, or had actual or constructive notice of your non-compliance, are not covered.

### E. REMOVAL COVERAGES

#### 1. DEBRIS REMOVAL

We will pay your expenses to remove debris except for expenses to extract "pollutants" from land or water; or remove, dispose of, restore, or replace polluted land or water.

Coverage does not apply to removal of trees, shrubs and plants.

#### 2. PROPERTY REMOVAL

If it is necessary to temporarily move "covered property" from any site to preserve it from a COVERED CAUSE OF LOSS, we will pay for any direct physical loss or damage to that property:

a. While it is being moved or while temporarily stored at any other site or location; but

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

b. Only if the loss or damage to the removed property occurs within 120 days after it is first moved.

Coverage does not apply beyond the termination or expiration date of this policy.

### 3. REMOVAL OF FALLEN TREES

We will pay the reasonable expense you incur removing any fallen tree from your "premises", provided that, in falling, the tree damaged "covered property" and provided further:

a. That the tree is not "covered property", but the cause of its falling was a COVERED CAUSE OF LOSS, except "collapse"; or

b. That the tree is "covered property", but the cause of its falling was a COVERED CAUSE OF LOSS other than fire, lightning, explosion, vehicle, aircraft, riot, civil commotion, collapse, vandalism, and "theft".

## III. PROPERTY CAUSES OF LOSS, EXCLUSIONS, AND LIMITATIONS SECTION

### A. COVERED CAUSES OF LOSS

Covered Causes of Loss includes IV. PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION and means immediate and direct physical loss or damage to "covered property" unless the loss is excluded under III.B. EXCLUSIONS, or limited under III.C. LIMITATIONS. When Special is shown on the "Declarations", COVERED CAUSES OF LOSS means direct physical loss unless the loss is excluded or limited in this policy.

### B. EXCLUSIONS

1. Except as otherwise specified, we will not pay for loss or damage which would not have occurred in the absence of one or more of the following excluded events regardless of: (i) the cause of the excluded event; (ii) other causes of the loss; or (iii) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

   **a. ORDINANCE OR LAW**

   The enforcement of or compliance with any ordinance or law which:

   (1) Regulates the construction, use, or repair of any property; or

   (2) Requires the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling, or demolition of property, or removal of debris, following a physical loss to that property.

   Except as provided under II.D. ORDINANCE OR LAW COVERAGE.

   **b. EARTH MOVEMENT**

   (1) Earthquake, including any earth sinking, rising, or shifting related to such event, tremors, aftershocks;

   (2) Landslide, including any earth sinking, rising, or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking, rising or shifting including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Soil conditions include contraction,

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

(5) Slope failure;

(6) "Mudslide" or "Mudflow";

(7) "Volcanic eruption". However, if "volcanic eruption" results in fire, building glass breakage, or "volcanic action", we will pay for the loss or damage caused by that fire, building glass breakage, or "volcanic action". All "volcanic eruptions" that occur within any 168 hour period will constitute a single occurrence;

(8) "Sinkhole collapse".

All of the above exclusions under III.B.1.b. apply whether earth movement is caused by natural or man-made conditions.

However, if earth movement, as described in b.(1) through b.(8) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**c. GOVERNMENTAL ACTION**

Seizure or destruction of property by order of governmental authority.

However, we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would otherwise be covered.

**d. NUCLEAR, BIOLOGICAL, CHEMICAL, AND RADIOLOGICAL HAZARDS EXCLUSION**

(1) We will not pay for any loss, damage, cost, or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

(a) Nuclear Hazard – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products, or substances, whether engineered or naturally occurring, involved therein or released thereby;

(b) Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

(c) Chemical Hazard – including, but not limited to, any chemical agent, material, product, or substance; and

(d) Radioactive Hazard – including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

(2) The provisions of subparagraphs (1)(b) and (1)(c) will not apply where the agent, material, product, or substance at issue is utilized in the course of business by the insured.

(3) Only if and to the extent required by state law, the following exception to the exclusion in paragraph (1) applies:

If a hazard excluded under paragraph (1) results in fire, we will pay for the loss, damage, cost, or expense caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to "covered property". This coverage does not apply to insurance provided under Maintenance Fees and Assessments, Community Income, and Extra Expense coverages or endorsements that apply to those coverages.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

e. **"WAR" AND MILITARY ACTION**

    (1) "War";

    (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government sovereign or other authority using military personnel or other agents; or

    (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

f. **WATER**

    (1) "Flood" and surface water comprised of any of the following:

        (a) "Flood";

        (b) Waves, wave wash, spray, tides, tidal waves, storm surge, or tsunamis;

        (c) Surface water, or any body or other collection of water, regardless of its source, and the overflow, whether or not wind driven, of any such water. This exclusion applies regardless of whether any such water or its overflow is:

            (i) A natural or otherwise occurring phenomenon; and

            (ii) A temporary or permanent phenomenon; or

        (d) "Mudslide" and "Mudflow".

        Paragraphs (1)(a), (b), and (c) above apply whether or not driven by wind.

    (2) Water under the surface of the ground, from any source, whether man-made or naturally occurring, whether or not it is pressing on or flowing or seeping through:

        (a) Foundations, basements, walls, or floors;

        (b) Any paved surfaces;

        (c) Doors, windows; or

        (d) Sump pumps, sump wells, and other openings in (a) and (b) above other than sewer and drain openings inside buildings.

        Paragraphs (2)(a), (b), and (c) above apply to sewer and drain openings inside buildings.

    (3) Continuous or repeated seepage, leakage, or inundation of water, or the presence of condensation, humidity, moisture, or vapor, that occurs over 14 days or more.

    (4) Overflow, leakage, or seepage of water, other liquids, gases, powder, or molten material from any source except fire protective systems, unless reasonable maintenance operations have been practiced.

    (5) Water, other liquids, powder, or molten material that leaks or flows from plumbing, heating, air conditioning, or other equipment, except fire protective systems, caused by or resulting from freezing, unless:

        (a) Heat is maintained in the building, structure, and "unit"; or

        (b) All the equipment is drained and the supply is shut off if the heat is not maintained; or

        (c) If the plumbing and related equipment cannot be completely drained and shut off, heat must be maintained in the building, structure, and unit.

However, with respect to the above exclusions 1.a., and 1.c. through 1.f., if loss or damage by fire, explosion, or sprinkler leakage results we will pay for that resulting loss or damage.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Property Coverage Part

g. **CERTAIN COMPUTER-RELATED LOSSES**

(1) The failure, malfunction, or inadequacy of:

(a) Any of the following, whether belonging to any insured or to others:

(i)   Computer hardware, including microprocessors;

(ii)  Computer application software;

(iii) Computer operating systems and related software;

(iv)  Computer networks;

(v)   Microprocessors (computer chips) not part of any computer system; or

(vi)  Any other computerized or electronic equipment or components; or

(b) Any other products, and any services, data functions, that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph (a) above;

due to the inability to correctly recognize, process, distinguish, interpret, or accept one or more dates or times.

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, or supervision provided or done by you or for you to determine, rectify, or test for, any potential or actual problems described in Paragraph g.(1) above.

If an excluded Cause of Loss as described in Paragraphs g.(1) and g.(2) above results in a "specified causes of loss", we will pay only for the loss or damage caused by such "specified causes of loss".

We will not pay for repair, replacement, or modification of any items in Paragraphs g.(1) and g.(2) above to correct any deficiencies or change any features.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. **ATMOSPHERE AND ENVIRONMENT**

(1) The following causes of loss to personal property, exterior structural glass, attached signs, and detached signs caused by:

(a) Dampness or dryness of the atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching, unless caused by the application of chemicals to glass.

However, if there is loss or damage by a "specified causes of loss" we will pay for that resulting loss or damage.

(2) Smog;

(3) Nesting or infestation, or discharge or release of waste products or secretions, by insects, spiders, birds, reptiles, rodents, or other animals;

(4) Falling objects, rain, snow, ice, or sleet to personal property in the open;

(5) Smoke, vapor, or gas from agricultural smudging or industrial operations;

(6) Weather conditions. Except that this exclusion applies only if weather conditions contribute in any way with a cause or event excluded in III.B.1. to produce loss or damage. However, if a COVERED CAUSE OF LOSS results, we will pay for the loss or damage caused by that COVERED CAUSE OF LOSS.

**Property Coverage Part**

b. **MATERIAL FACTORS**

    (1) Wear and tear.

    (2) Rust, corrosion, decay, contamination, or deterioration.

    (3) Latent defect, innate or inherent vice, or any quality in the property that causes it to damage or destroy itself.

    (4) Settling, cracking, bulging, shrinking, or expanding.

    (5) Based upon or arising out of the existence of, exposure to or required removal or abatement of rot, mold, mildew, or other fungi, regardless of whether such rot, mold, mildew, or other fungi ensues from any cause or condition including, but not limited to, any such cause or condition involving the presence, discharge, or infiltration of moisture, vapor, water, or any other liquid or any damage related thereto.

c. **MORAL FACTORS**

    (1) "Theft" of property from the inside of an unattended vehicle or trailer unless:

        (a) Contained in a securely locked body or compartment of the vehicle; and

        (b) There are visible marks of forced entry.

    (2) Forgery, or counterfeiting of "money", "securities", or "fine arts".

    Except as provided under IV.B. WORLD WIDE CRIME COVERAGES.

    (3) Dishonest or criminal acts by you, any of your "employees", directors, "officers", "committee members", trustees, authorized representatives, or anyone to whom you entrust the property for any purpose:

        (a) Acting alone or in collusion with others; or

        (b) Whether or not occurring during the hours of employment.

    This exclusion does not apply to acts of destruction by your "employees". However, "theft" by your "employees" is not covered.

    Except as provided under IV.B. WORLD WIDE CRIME COVERAGES.

    (4) Property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

    (5) Property that has been voluntarily parted with by you or by anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device, or false pretense. This includes wrongful conversion.

    (6) Loss resulting from the disclosure of your or another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information; or

    (7) Loss resulting from the use of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information.

d. **"COLLAPSE"**

    "Collapse".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

However, if loss or damage by another COVERED CAUSE OF LOSS results at the "premises", we will pay for the resulting loss or damage.

Except as provided under IV.A. "COLLAPSE" COVERAGE.

### e. POLLUTION

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release, or escape is itself caused by any of the "specified causes of loss".

However, if loss or damage by "specified causes of loss" results, we will pay for the resulting damage caused by "specified causes of loss".

### f. ASBESTOS

Caused by, based on, attributable to, related to or in any manner and at any time arising out of:

(1) The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, exposure, ownership, sale, or disposal of asbestos, asbestos fibers, asbestos dust, or material containing asbestos.

(2) Any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos dust, asbestos fibers, or material containing asbestos.

## 3. ACTS OR OMISSIONS

We will not pay for loss or damage caused by or resulting from any of the following:

a. Acts, decisions, errors, or omissions, including the failure to act or decide, of any person, group, organization, or governmental body;

b. Faulty, inadequate, defective, or negligent:

(1) Planning, zoning, development, surveying, siting;

(2) Design, testing, specifications, workmanship, repair, construction, renovation, remodeling, grading, earth compaction;

(3) Materials used in repair, construction, renovation, or remodeling; or

(4) Maintenance. However, if loss or damage by "equipment breakdown" results, we will pay for that resulting loss or damage.

c. Giving or surrendering of property in any exchange or purchase for which the only proof of which, as to its existence or amount, is an inventory computation; or a profit and loss computation.

d. Programming, coding, data entry, or data manipulation errors including accidental erasure; or

e. Accounting or arithmetical errors or omissions.

However, if a COVERED CAUSE OF LOSS results, we will pay for the loss or damage caused by that COVERED CAUSE OF LOSS.

## C. LIMITATIONS

We will not pay for loss of or damage to property, as described and limited below. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited below.

1. To a "unit" caused by or resulting from vandalism, except if committed by your tenant.

2. To the interior of any building or structure caused by or resulting from ice, rain, snow, sleet, water, thawing or melting of snow, sleet, or ice; sand or dust, all whether wind driven or not, unless:

---

**Property Coverage Part**

    a.  The loss or damage is caused by or results from thawing or melting of snow, sleet, or ice on the roof of the building or structure; or

    b.  The building or structure first sustains damage by a COVERED CAUSE OF LOSS to an exterior surface through which the ice, rain, snow, sleet, water, sand, or dust enters.

3.  Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. However, this provision does not apply to coverage provided under "money" and "securities".

4.  Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

5.  Breakage of fragile articles such as "fine arts", glassware, statuary, marble, chinaware, and porcelains unless caused by "specified causes of loss".

6.  To all delinquent and prospective maintenance fees and assessments owed by any person or organization whose payments of such amounts are not current as of the date of loss. This limitation applies to all such fees and assessments, whether they are due as of or after the date the "period of restoration" commences.

7.  With regard to II.D. ORDINANCE OR LAW COVERAGE, we will not pay for the costs associated with the enforcement of any ordinance or law which:

    a.  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

    b.  Relates in any way to asbestos or lead or any product or material containing asbestos or lead. This includes the use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, or disposal of any such product or material.

    c.  Is based upon or arising out of the existence, exposure to, required removal or abatement of rot, mold, mildew, or other fungi, regardless of whether such rot, mold, mildew, or other fungi ensues from any cause or condition including, but not limited to, any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water, or any other liquid or any damage related thereto.

## IV. PROPERTY ADDITIONAL COVERED CAUSES OF LOSS SECTION

### A. "COLLAPSE" COVERAGE

1.  We will pay for direct physical loss or damage to "covered property" if the "collapse" is caused by one or more of the following:

    a.  The "specified causes of loss" or breakage of structural glass, all only as insured against in this Property Coverage Part;

    b.  Decay that is hidden from view, unless the presence of such decay is known to you or anyone acting on your behalf prior to collapse;

    c.  Insect or vermin damage that is hidden from view, unless the presence of such decay is known to you or anyone acting on your behalf prior to collapse;

    d.  Weight of people or personal property;

    e.  Weight of rain or snow that collects on a roof;

    f.  Use of defective material or methods in construction, remodeling, or renovation if the "collapse" occurs during the course of the construction, remodeling, or renovation. However, if the "collapse" occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

loss listed in A.1.a. through A.1.e. above, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling, or renovation contributes to the collapse.

The criteria set forth in the definition of "collapse" does not limit the coverage otherwise provided under paragraph III.A. COVERED CAUSES OF LOSS for the causes of loss listed in 1.a., 1.d., and 1.e. above.

2.  PROPERTY NOT COVERED - "COLLAPSE"

    a.  The following types of property are not covered:

        (1)  Outdoor: satellite dishes, radio, television, and other antennas, including wiring;

        (2)  Masts or towers;

        (3)  Awnings or temporary structures;

        (4)  Gutters and downspouts;

        (5)  Yard fixtures;

        (6)  Outdoor "swimming pools";

        (7)  Fences;

        (8)  Piers, wharves, or docks;

        (9)  Beach or diving platforms, or appurtenances;

        (10) Retaining or freestanding walls; or

        (11) Walkways, roadways, or other paved surfaces.

    b.  Unless the loss or damage is:

        (1)  Caused by "specified causes of loss"; or

        (2)  A direct result of the "collapse" of a building or structure caused by a COVERED CAUSE OF LOSS, except wind or hail.

3.  If personal property abruptly falls down or caves in and such event is not the result of "collapse" of a building or structure, we will pay for loss or damage to "covered property" caused by such falling down or caving in of personal property only if the falling down or caving in:

    a.  Was caused by a cause of loss listed in IV.A.1.a. through IV.A.1.f.;

    b.  Is of personal property inside a building or structure; and

    c.  Is of property not of a kind listed in IV.A.2. regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this paragraph 3. does not apply to personal property if marring and scratching, or both, is the only damage to that personal property caused by the falling down or caving in.

## B. WORLD WIDE CRIME COVERAGES

Coverage is provided only when a limit of insurance is shown in the "Declarations".

### 1. "EMPLOYEE DISHONESTY"

We will cover "employee dishonesty" that directly results in loss of, or loss from damage to all tangible property and "money" and "securities" anywhere in the world.

### 2. "COMPUTER FRAUD"

We will cover "computer fraud" that directly results in loss of, or loss from damage to all tangible property and "money" and "securities" anywhere in the world.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

**3. "DEPOSITORS FORGERY"**

We will cover "depositors forgery" that directly results in loss of any "covered instrument" anywhere in the world.

However with respect to World Wide Crime Coverages, coverage does not apply to any "covered employee" or "committee member" immediately upon discovery by:

    (1) You; or

    (2) Any of your "officers", trustees, and directors not in collusion with the "covered employee", "committee member", trustee, director, "officer", or board member;

of any dishonest act committed by that "covered employee", "committee member", trustee, director, "officer", or board member whether before or after being hired or appointed by you.

**C. "EQUIPMENT BREAKDOWN"**

We will pay for direct physical loss of or damage to "covered property" caused by or resulting from "equipment breakdown" at the "premises" described in the "Declarations".

**1. Additional Coverages**

The following additional coverages apply to "equipment breakdown" and are added as a part of and not in addition to the limit per loss:

**a. "Reasonable Extra Cost"**

We will pay for the "reasonable extra cost" resulting from "equipment breakdown" with respect to your damaged "covered property". We will pay the "reasonable extra cost" to:

    (1) Make temporary repairs;

    (2) Expedite permanent repairs; and

    (3) Expedite permanent replacement.

**b. "Computer Equipment"**

We will pay for loss or damage to your "computer equipment" caused by "equipment breakdown".

**c. Service Interruption**

Any insurance provided for Maintenance Fees and Assessments, Community Income, or Extra Expense is extended to apply to your loss, damage or expense caused by "equipment breakdown" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks, or data transmission. The equipment must meet the definition of "equipment breakdown" except that it is not "covered property".

**d. Environmental, Safety, and Efficiency Improvements**

If "covered property" requires replacement due to "equipment breakdown", we will pay your additional cost to replace with equipment that is better for the environment, safer, or more efficient than the equipment being replaced.

However, we will pay up to 150% of what the cost would have been to repair or replace with like kind and quality. This condition does not apply to any property to which Actual Cash Value applies.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

e. **Risk Improvement**

(1) If "covered property" suffers direct physical loss or damage due to "equipment breakdown", we will pay for the insured to improve the "power quality" of the electrical system or equipment at the loss location where the "equipment breakdown" occurred.

(2) We will pay the reasonable extra cost to improve "power quality" for the following electrical systems and/or equipment improvements:

(a) Installation of surge protection devices (SPD's) which are installed at the loss location's line disconnect, load disconnect, or on specific pieces of equipment and that are certified by Underwriter Laboratories (UL) or has an equivalent certification.

However, SPD's do not include any SPD's which are cord-connected surge strips, direct plug-in SPD's or receptacle SPD's;

(b) An upgrade and/or replacement of electrical panels, switchgear and/or circuit breakers; or

(c) Electrical wire and wiring improvements which include installation of: flexible conduit, junction boxes and/or ground wiring.

(3) We will not pay more than 10%, to a maximum limit of $10,000, of the loss amount paid. An invoice for implementation of this additional coverage must be sent to us within 180 days after the payment of the loss is received.

## D. COMPUTER VIRUS

With respect to the COVERED CAUSES OF LOSS applicable to "computer equipment" and "media" coverage under COMMUNITY PERSONAL PROPERTY, the COVERED CAUSES OF LOSS include a virus, harmful code, or similar instruction introduced into or enacted on "computer equipment" and "media", designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system by any "employee", including a "temporary worker" or a "leased worker", or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair, or replace that system. However, the most we will pay under this Computer Virus Additional Covered Cause of Loss is $5,000 for all loss or damage sustained in any policy year regardless of the number of occurrences, number of premises, locations, or "computer equipment" and "media" involved.

# V. PROPERTY SUPPLEMENTARY PAYMENTS SECTION

**Coverage is provided only when a limit of insurance is shown in the "Declarations".**

## A. MONETARY REWARD

A reward for "new information" leading to a conviction in connection with a COVERED CAUSE OF LOSS resulting from arson, vandalism, or deliberate and malicious acts.

## B. FIRE DEPARTMENT SERVICE CHARGES

We will pay for your liability for fire department service charges, when the fire department is called to save or protect "covered property" from a COVERED CAUSE OF LOSS if:

1. Assumed by contract prior to a loss; or

2. Required by local ordinance.

The limit shown in the "Declarations" is the most we will pay regardless of the number of responding fire departments or fire units.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## C. FIRE EXTINGUISHER RECHARGE

The cost to recharge fire extinguishers used in combating an actual or suspected COVERED CAUSE OF LOSS.

## D. "POLLUTANT" CLEAN UP AND REMOVAL

We will pay your expense to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by or results from a COVERED CAUSE OF LOSS that occurs during the "policy period".

This coverage does not apply to costs to test for, monitor, or assess the existence, concentration, or effects of "pollutants". However, we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

# VI. PROPERTY CONDITIONS SECTION

The Property Coverage Part is subject to the following conditions.

## A. CONCEALMENT, MISREPRESENTATION, OR FRAUD

This Property Coverage Part is void in any case of fraud by you as it relates to this Property Coverage Part at any time. Also, this Property Coverage Part is void if you, or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. The Property Coverage Part;

2. The "covered property";

3. Your interest in the "covered property"; or

4. A claim under this Property Coverage Part.

Under this condition you also means any "officer", director, or trustee when acting on your behalf.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

## C. BREACH OF CONDITIONS

The breach of any condition of this Property Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss, the breach of condition does not exist.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Property Coverage Part unless:

1. There has been full compliance with all of the terms of this Property Coverage Part; and

2. The action is brought within two years after the date on which the direct physical loss or damage occurred.

## E. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of "covered property" will benefit from this insurance.

## F. OTHER INSURANCE AND RECOVERY

1. This insurance is primary with regard to any other insurance in the name of any unit owner which covers the same property.

2. You may have other insurance subject to the same plan, terms, conditions, and provisions as the insurance under this Property Coverage Part. If you do, we will pay our share of the covered loss or

# Property Coverage Part

damage. Our share is the proportion that the applicable limit of insurance under this Property Coverage Part bears to the sum of the limits of all insurance covering on the same basis; and

3. If there is other insurance covering the same loss or damage, other than described in 1. or 2. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable limit of insurance.

   However, with respect to any property described in provision I.B.3. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY, if loss or damage is also covered by insurance available to the developer, contractor, or builder which is performing or which has performed construction or renovation to any such property, this insurance does not apply at all.

4. With respect to property in the care and custody of an armored motor vehicle company, we will pay only for the amount of loss that you cannot recover:

   a. Under your contract with the armored motor vehicle company; and

   b. From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

## G. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1. If any person or organization to or for whom we make payment under this Property Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

2. Other than the builder, developer, or sponsor, for acts or omissions performed as the builder, developer, or sponsor, you may waive your rights against another party in writing:

   a. Prior to a covered loss; or

   b. After a covered loss, only if, at the time of the loss, that party is one of the following:

      (1) An insured on this policy; or

      (2) A tenant of yours.

   Unless the payment is a result of any uncollected amounts for maintenance fees and assessments under II.A. MAINTENANCE FEES AND ASSESSMENTS or any dishonest or criminal act covered under IV.B. WORLD WIDE CRIME COVERAGES.

3. Unless the payment is a result of any uncollected amounts for maintenance fees and assessments under II.A. MAINTENANCE FEES AND ASSESSMENTS, or any dishonest or criminal act covered under IV.B. WORLD WIDE CRIME COVERAGES, we waive any rights which this condition may give us against all of the following:

   a. You.

   b. Members of the board of directors for acts or omissions within the scope of their duties for you.

   c. Any unit owner and residing household members.

   We reserve our right, however, to recover against the builder, developer, or sponsor for acts or omissions that the builder, developer, or sponsor may be liable for in the capacity as a builder, developer, or sponsor.

## H. MORTGAGE HOLDER RIGHTS

1. The term mortgage holder includes trustee.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Property Coverage Part

2. If the condominium is terminated, we will pay for covered loss of, or damage to, buildings or structures to each mortgage holder shown on the "Declarations" in order of their precedence, as interests may appear.

   In all other respects, we will pay for loss to buildings or structures to you or the designated insurance trustee in accordance with VI.O. LOSS PAYMENT.

3. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

4. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

   a. Pays any premium due under this policy at our request if you have failed to do so; and

   b. Submits a signed sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

   c. Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

   All of the terms of this policy will then apply directly to the mortgage holder.

5. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   a. The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   b. The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired. .

   At our option, we may pay to the mortgage holder the whole principal of the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

6. If we cancel this policy, we will give written notice to the mortgage holder at least 10 days before the effective date of cancellation.

7. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 30 days before the expiration date of this policy.

## I. INSURED'S DUTIES IN THE EVENT OF LOSS OR DAMAGE

Failure to perform these duties will impair your rights under this Property Coverage Part or could result in denial of coverage.

1. Notify us in writing of any clean up or removal expenses for debris and "pollutants" within 180 days of the earlier of the following:

   a. The date of the direct physical loss or damage which creates the debris or pollution; or

   b. The expiration date of this policy.

2. With regard to unpaid maintenance fees and assessments, community income, and accounts receivable under I.A.3. COMMUNITY PERSONAL PROPERTY, II.A. MAINTENANCE FEES AND ASSESSMENTS, and II.B. COMMUNITY INCOME you must:

   a. Make a reasonable effort to collect them;

   b. Not waive your right to collect them; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

   c.  Cooperate with us in taking action to collect any such amounts you have been unable to collect after reasonable effort. The taking of any such action shall be at our sole election.

3.  Notify the police if a law may have been broken.

4.  Give us prompt notice of the loss or damage and include a description of the property involved.

5.  With regard to "money" and "securities", you must keep adequate records of the covered property to substantiate the amount of your claim.

6.  With regard to the "depositors forgery" of any "covered instrument", you must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

7.  As soon as possible, give us a description of how, when and where the loss or damage occurred.

8.  Take all reasonable steps to protect the "covered property" from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs for consideration in the settlement of the claim.

9.  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.

10. As often as may reasonably be required, permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged and undamaged property for inspection, testing, and analysis. Permit us to make copies from your books and records.

11. Permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

12. Send us a signed, sworn statement of loss containing the information we request to investigate or settle the claim. You must do this within 60 days.

13. Cooperate with us in the investigation or settlement of the claim.

## J. LIMITS OF INSURANCE

1.  Regardless of the number of years this insurance remains in force or the number of premiums paid, no limit of insurance accumulates from annual policy term to annual policy term.

2.  Unless otherwise specified, the most we will pay for loss or damage is the applicable limit of insurance shown in the "Declarations". With regard to property you rent or lease from others, we shall pay the amount any lease or rental agreement specifies as the least you owe if that amount is greater than the property's replacement cost. However, we will not pay the owners more than their financial interest in the "covered property".

3.  Unless otherwise specified in the "Declarations", the applicable limits of insurance apply on a per occurrence basis.

4.  With regard to IV.B. WORLD WIDE CRIME COVERAGES provided under this policy, loss is covered only if:

   a.  Discovered not later than one year from the termination of this coverage; and

   b.  Subject to 5. below, the loss is sustained during the effective period of this coverage.

5.  With regard to IV.B. WORLD WIDE CRIME COVERAGES provided under this policy:

   a.  If you or your predecessor in interest sustained loss during the period of any prior insurance for which you or your predecessor in interest could have recovered under such prior insurance but for the

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

failure of you or your predecessor in interest to discover such loss within the time period allowed by such prior insurance, we will pay such loss under this insurance, provided:

(1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

b. The most we will pay is the larger of the amount recoverable under this insurance or prior insurance for any loss covered:

(1) Partly by this insurance; and

(2) Partly by any prior canceled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest.

## K. DEDUCTIBLE

### 1. PER OCCURRENCE DEDUCTIBLE

We will not pay for loss, damage, or expense in any one occurrence until the amount of loss, damage, or expense exceeds the deductible shown in the "Declarations". We will then pay the amount of loss, damage, or expense in excess of such deductible up to the applicable limit of insurance. Except for Paragraphs 2. and 3. below, when any occurrence is subject to more than one deductible, we will apply only the highest deductible.

### 2. PER "UNIT" DEDUCTIBLE

With regard to loss or damage to I.A.2. "UNITS", we will not pay for loss, damage, or expense in any one occurrence until the amount of loss, damage, or expense exceeds the deductible shown in the "Declarations". We will then pay the amount of loss, damage, or expense in excess of such deductible up to the applicable limit of insurance. Any resulting deductible or deductibles will apply in addition to the deductible which may result from Paragraph 1. above.

### 3. PER "UNIT" DEDUCTIBLE – ICE DAMMING

With regard to loss or damage to I.A.2. "UNITS" as provided under III.C.LIMITATIONS, 2. we will apply the deductible shown in the "Declarations" separately to each "unit" that actually sustains resulting water damage. Any resulting deductible or deductibles will apply in addition to the deductible which may result from Paragraph 1. above.

## L. VALUATION

The value of all property will be determined at the time of loss, unless otherwise specified in this section.

### 1. REPLACEMENT COST

a. When the "Declarations" indicate that coverage is provided on a replacement cost basis, we will pay no more than the least of the following:

(1) The cost to repair or replace the property at the same site, regardless if repaired or replaced at the same site or another, without deduction for depreciation:

(a) With comparable material;

(b) With property of the same height, floor area, and style; and

(c) With property intended for the same purpose;

(2) The amount actually and necessarily expended in repairing or replacing the property at the same site; or,

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Property Coverage Part

    (3) The limit of insurance.

  b. However, we will not pay more than:

    (1) Actual cash value of the damage until the repair or replacement is completed. After the actual cash value of the damage has been paid, you may still make a claim on a replacement cost basis if you notify us that repair or replacement has commenced within 200 days after the loss or damage.

    (2) Local builder's grade costs under I.A.2.a. ORIGINAL SPECIFICATIONS if the original plans and specifications cannot be documented or determined.

    (3) With respect to "computer equipment" the cost to replace the equipment with the most functionally equivalent to the damaged equipment even if such equipment has technological advantages and represents an improvement in function, or forms part of a program enhancement.

    (4) With respect to "data" and "media" your cost to research, replace, and/or restore all forms of electronic and magnetic tapes and disks and "data" and the costs to reprogram instructions for use in any covered "computer equipment".

    We will not pay to reproduce:

      (a) Software programs or operating systems that are not commercially available; or

      (b) "Data" that is obsolete, unnecessary, or useless to you.

    (5) With respect to "valuable papers and records" the cost to research and restore the information on lost or damaged "valuable papers and records".

    (6) With respect to accounts receivables the following costs for lost or damaged accounts receivable:

      (a) All amounts due you, that you are unable to collect;

      (b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

      (c) Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

      (d) Other reasonable expenses that you incur to reestablish your records of accounts receivable.

    (7) With respect to "fine arts":

      (a) The amount for which the article or item could reasonably be expected to be repaired to its condition immediately prior to loss; or

      (b) The amount for which the article or item could reasonably be expected to be replaced with one substantially identical to it; or

      (c) The amount of insurance.

## 2. INCREASED REPLACEMENT COST

  a. When the "Declarations" indicate that coverage is provided on an increased replacement cost basis, we will pay:

    (1) If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another premises, the least of the following:

      (a) The increased cost of construction at the same "premises"; or

      (b) The limit of insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

    (2) If the ordinance or law requires relocation to another premises, the least of the following:

        (a) The increased cost of construction at the new premises; or

        (b) The limit of insurance.

  b. We will not pay:

    (1) Unless and until the property is actually repaired or replaced;

    (2) Unless the repairs or replacement are made as soon as reasonably possible, but within two years of the loss or damage. We may extend this period in writing during the two year period; and,

    (3) Unless the restored or remodeled property is intended for similar occupancy as the current property except when such occupancy is not permitted by zoning or land use ordinance or law.

This applies only to Increased Cost of Construction coverage.

### 3. GUARANTEED REPLACEMENT COST

When the "Declarations" indicate that coverage is provided on a guaranteed replacement cost basis, subject to VI.M. REPORTING REQUIREMENTS, we will waive VI.L.1.a.(3) above. All other conditions of VI.L.1. REPLACEMENT COST apply.

### 4. ACTUAL CASH VALUE

When the "Declarations" indicate that coverage is provided on an actual cash value basis, we will pay no more than the least of the following:

  a. The replacement cost less the depreciation of the property at the time of the loss; or

  b. The limit of insurance.

### 5. ACTUAL LOSS SUSTAINED

When the "Declarations" indicate that coverage is provided on an actual loss sustained basis, we will pay no more than the least of the following:

  a. Actual dollar amount of your loss; or

  b. Amount you actually and necessarily spend; or

  c. The limit of insurance.

### 6. EXTENDED REPLACEMENT COST

When the "Declarations" indicate that coverage is provided on an extended replacement cost basis, the following is added to Paragraph VI.L.1.a.(3) above:

However, we will increase the limit of insurance by up to 25%.

All other conditions of VI.L.1. REPLACEMENT COST apply.

## M. REPORTING REQUIREMENTS

### 1. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY

Insurance under I.B.3. NEWLY ACQUIRED, CONVEYED, OR TRANSFERRED PROPERTY will terminate when any of the following first occurs:

  a. This policy ends; or

  b. 90 days expire after you acquire or begin to construct the property; or

  c. You request coverage on such property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

### 2. GUARANTEED REPLACEMENT COST

When VI.L.3. GUARANTEED REPLACEMENT COST coverage is provided you must report to us within 30 days following the completion of:

a.  Any addition, improvement, or alteration to property covered under I.A.1. COMMUNITY BUILDINGS AND STRUCTURES and I.A.2. "UNITS" which increases the value by $25,000 or more.

b.  Any addition, improvement, alteration, or acquisition to property covered under I.A.3. COMMUNITY PERSONAL PROPERTY which increases the value by $25,000 or more.

Your failure to comply with this condition will void any recovery under VI.L.3. GUARANTEED REPLACEMENT COST for additions, improvements, alterations, or acquisitions to property described in a. and b. above. We will charge you additional premium for values reported from the date construction begins or you acquire the property.

## N. APPRAISAL

1.  If you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss. In this event, each party will do the following:

a.  Select a competent and impartial appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.

   (1) The appraisers will state separately and independently the amount of the loss or damage.

   (2) If the two appraisers fail to agree they will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.

   (3) An agreement by any two will be binding as to the amount of the loss.

b.  Pay the costs of its own appraiser.

c.  Bear the other expenses of the appraisal and umpire equally.

2.  If there is an appraisal, we will still retain our right to deny the claim.

## O. LOSS PAYMENT

1.  In accordance with VI.L. VALUATION, in the event of loss or damage covered by this Property Coverage Part, at our option, we will either:

a.  Pay the value of lost or damaged property;

b.  Pay the cost of repairing or replacing the lost or damaged property;

c.  Take all or any part of the property at an agreed or appraised value; or

d.  Repair, rebuild, or replace the property with other property of comparable quality.

Except for coverage provided under II.D ORDINANCE OR LAW COVERAGE.

2.  With regard to II.D. ORDINANCE OR LAW COVERAGE provided under this policy, coverage is subject to the qualifications shown below. The property must sustain:

a.  Direct physical damage that is covered under this policy and as a result of such damage you are required to comply with the ordinance or law; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Property Coverage Part**

    b. Both direct physical damage that is covered under this policy; and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety you are required to comply with the ordinance or law.

    In this situation, we will not pay the full amount of loss otherwise payable under II.D. ORDINANCE OR LAW COVERAGE. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

    However, if the covered direct physical damage, alone, would have resulted in the enforcement of or compliance with the ordinance or law, then we will pay the amount of loss otherwise payable under the terms of II.D. ORDINANCE OR LAW COVERAGE.

However, if the property sustains direct physical damage that is not covered under this policy, and such damage is subject to ordinance or law, then no coverage under II.D. ORDINANCE OR LAW COVERAGE will be provided even if the property has also sustained direct physical damage.

3. We will notify you of our intentions within 30 days after we receive the sworn statement of loss.

4. We will not pay for more than your financial interest in the "covered property".

5. We may adjust losses with the owners of lost or damaged property, if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the "covered property".

6. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

7. We will pay within 30 days after we receive the sworn statement of loss, if you have complied with all of the terms of this Property Coverage Part and:

    a. We have reached agreement with you on the amount of loss; or

    b. An appraisal award has been made.

8. If an insurance trustee is shown in the "Declarations", we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

## P. RECOVERIES AND SUBROGATION

Except with regard to "money" and "securities", "employee dishonesty", "computer fraud", and "depositors forgery", or any loss subject to multiple deductibles:

1. If you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property.

    We will pay recovery expenses and the expenses to repair the recovered property, subject to the amount we paid you.

2. If we issued payment and are successful in pursuing subrogation for all or a portion of the total covered loss, and that loss payment was subject to a deductible, we may first reimburse you your deductible up to the limit of your covered exposure or the maximum amount we have recovered, whichever is less, without deduction for the cost to pursue the funds.

3. With regard to "money" and "securities" and IV.B. WORLD WIDE CRIME COVERAGES:

    a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

        (1) To you, until you are reimbursed for any loss that you sustain that exceeds the limit of insurance and the deductible amount, if any;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Property Coverage Part

(2) Then to us, until we are reimbursed for the settlement made;

(3) Then to you, until you are reimbursed for that part of the loss equal to the deductible amount, if any.

b. Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security, or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

## Q. ABANDONMENT

You cannot abandon any property to us.

## R. REIMBURSEMENT

In the event we pay you more than you are entitled to under the provisions of this contract, you must reimburse us in the amount of any such overpayment.

## S. UNIT OWNER ACTS OR OMISSIONS

No act or omission by any unit owner will void the policy or be a condition to recovery under this policy. However, this does not apply to unit owners acting within the scope of their authority on behalf of your Association.

This does not supersede any exclusions contained in this policy.

## T. SUSPENSION

Upon discovery of a dangerous condition with respect to any boiler, fired or unfired pressure vessel, refrigerating or air conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission, or utilization of mechanical or electrical power, any of our representatives may immediately suspend the insurance with respect to loss or damage to said object by written notice mailed or delivered to you at your address, or at the location of the object, as specified for it in the "Declarations". Insurance so suspended may be reinstated by us, but only by an endorsement issued to form a part hereof. You shall be allowed the unearned portion of the premium paid for such suspended insurance, pro rata, for the period of suspension.

## U. POLICY PERIOD

Under this Property Coverage Part we provide coverage for loss or damage during the "policy period".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Liability Coverage Part

**Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations". "We", "us", and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XVI. DEFINITIONS SECTION.**

**THE AMOUNT WE WILL PAY FOR DAMAGES IS LIMITED AS DESCRIBED IN XIV. GENERAL LIABILITY LIMITS OF INSURANCE SECTION.**

**GENERAL LIABILITY**

**The word insured means any person or organization qualifying as such under XII. GENERAL LIABILITY WHO IS AN INSURED SECTION.**

## VII. GENERAL LIABILITY COVERAGES SECTION

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.

With respect to "bodily injury" or "property damage", this insurance applies to "bodily injury" or "property damage" only if:

    a. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    b. The "bodily injury" or "property damage" occurs during the "policy period". However, all "bodily injury" or "property damage" arising out of the same "occurrence" shall be deemed to have occurred on the date the first such "bodily injury" or "property damage" covered by this policy or any other policy issued by us occurred regardless of the number of insured persons, injured persons, claims, claimants, or policies involved.

    c. Prior to the "policy period", no insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If an insured knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, in whole or in part, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have occurred prior to the "policy period".

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or begun to occur.

With respect to "personal injury" or "advertising injury", this insurance applies only to "personal injury" or "advertising injury" caused by an "offense" arising out of the insured's operations which was committed during the "policy period" in the "coverage territory".

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION or X. GENERAL LIABILITY DEFENSE OF "SUIT" SECTION.

# Liability Coverage Part

Below are specific descriptions of coverage and specific applicable exclusions, designated by capitalized letter, from XI. GENERAL LIABILITY EXCLUSIONS SECTION.

This insurance applies only to:

## A. "BODILY INJURY" AND "PROPERTY DAMAGE"

### 1. "BODILY INJURY"

"Bodily injury" caused by an "occurrence". Only exclusions A., B., C., D., E., F., G., H., I., J., K., L., M., N., O., S., AA., BB., CC., DD., EE., FF., and those added by endorsement, apply to "bodily injury".

### 2. "PROPERTY DAMAGE"

"Property damage" caused by an "occurrence."

Only exclusions A., B., C., D., E., F., G., H., I., J., K., L., M., N., P., Q., R., S., AA., BB., CC., DD., EE., FF., and those added by endorsement, apply to "property damage".

## B. "PERSONAL INJURY" AND "ADVERTISING INJURY"

### 1. "PERSONAL INJURY"

"Personal injury" caused by an "offense" arising out of your operations, excluding advertising, publishing, broadcasting, or telecasting done by or for you.

Only exclusions A., B., C., D., G., H., I., N., T., U., AA., BB., CC., EE., FF., and those added by endorsement, apply to "personal injury".

### 2. "ADVERTISING INJURY"

"Advertising injury" caused by an "offense" committed in the course of advertising your goods, products or services.

Only exclusions A., B., C., D., G., H., I., T., V., AA., BB., CC., EE., FF., and those added by endorsement, apply to "advertising injury".

## C. "HIRED AUTO" AND "NONOWNED AUTO"

### 1. "HIRED AUTO"

"Bodily injury" or "property damage" caused by an "occurrence" arising out of the maintenance or use of a "hired auto" by you, your directors or "officers", or your "employees" in the course of your operations.

### 2. "NONOWNED AUTO"

"Bodily injury" or "property damage" caused by an "occurrence" arising out of the use of any "nonowned auto" in your operations by any person other than you.

Only exclusions B., D., E., G., H., I., M., N., O., X., Y., EE., and those added by endorsement, apply to "hired auto" and "nonowned auto".

## D. PROPERTY DAMAGE LEGAL LIABILITY - REAL PROPERTY

"Property damage" caused by an "occurrence" to real property of others, including permanently attached fixtures, rented to or occupied by you.

Only exclusions A., D., E., G., H., I., M., N., Q., AA., BB., DD., EE., and those added by endorsement, apply to this coverage.

# VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION

**Exclusions under XI. GENERAL LIABILITY EXCLUSIONS SECTION applicable to Garage and Parking Area Legal Liability coverage are designated by letter in this section.**

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Liability Coverage Part**

We will pay all sums the insured legally must pay as damages for "property damage", which are direct, to an "auto", "auto equipment" or "mobile equipment" left in the insured's care while the insured is attending, servicing, repairing, parking, or storing it in your "garage operations" provided that the loss is covered by either A. or B. below:

## A. COMPREHENSIVE COVERAGE

From any cause except:

1. The "auto's" collision with another object; or
2. The "auto's" overturn.

## B. COLLISION COVERAGE

Caused by:

1. The "auto's" collision with another object; or
2. The "auto's" overturn.

Only exclusions D., E., G., H., I., M., N., W., DD., EE. and those added by endorsement, apply to this coverage.

## IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION

**Exclusions under XI. GENERAL LIABILITY EXCLUSIONS SECTION that are applicable to Medical Payments coverage are designated by letter in this section.**

We will pay reasonable "medical expenses" for "bodily injury", without regard to fault, caused by an accident occurring: on premises you own or rent; on ways adjoining premises you own or rent; or because of your operations. Payments will not exceed the limit of insurance. We will pay provided that:

    a. The accident takes place in the "coverage territory" and during the "policy period";

    b. The expenses are incurred and reported to us within one year of the date of the accident; and

    c. The injured person submits to, at our expense, an examination under oath and/or an examination by physicians of our choice, as often as we reasonably require.

Only exclusions A., B., C., D., E., F., G., H., I., J., K., L., M., N., O., Z., BB., CC., DD., and those added by endorsement, apply to this coverage.

## X. GENERAL LIABILITY DEFENSE OF "SUIT" SECTION

We will have the right and duty to defend the insured against any "suit" seeking damages payable under VII. GENERAL LIABILITY COVERAGES SECTION or VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY COVERAGE SECTION. We may, at our discretion, investigate any "occurrence" or "offense", and settle any "claim" or "suit" that may result. Our right and duty to defend end when we have exhausted the applicable limit of insurance in the payment of judgments or settlements under VII. GENERAL LIABILITY COVERAGES SECTION or VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY COVERAGE SECTION. We will pay "defense costs", with respect to any "suit" we defend, in addition to the limit of insurance. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply.

Even if we initially defend or initially pay to defend any "suit", we may later determine that there is no coverage for such "suits". In that event, we have the right to reimbursement for the "defense costs" we incur from the date we notify you, in writing, of our:

    a. Determination that coverage does not apply;

    b. Reservation of our rights to terminate the defense or payment for the defense; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Liability Coverage Part**

    c.  Intention to seek reimbursement of our "defense costs".

## XI. GENERAL LIABILITY EXCLUSIONS SECTION

As specifically indicated in VII. GENERAL LIABILITY COVERAGES SECTION, VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION, and IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION, this insurance does not apply to: .

### A. "PROFESSIONAL SERVICE"

"Bodily injury", "property damage", "personal injury", or "advertising injury" arising out of the rendering or failure to render "professional service".

This exclusion does not apply to "bodily injury" arising from "incidental medical malpractice" provided for under VII.A.1. "BODILY INJURY".

### B. WORKERS COMPENSATION AND SIMILAR LAWS

Any obligation of the insured under workers compensation, disability benefits, unemployment compensation law, or any similar law.

### C. EMPLOYMENT RELATED PRACTICES

"Bodily injury", "property damage", "personal injury", or "advertising injury" sustained by any person or organization arising out of or in any way related to any:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment related practices, policies, acts, or omissions; or

4. Consequential "bodily injury", "property damage", "personal injury", or "advertising injury" as a result of subparagraphs 1., 2., and 3. above.

This exclusion applies whether any insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

### D. CERTAIN CONTRACTS

"Bodily injury", "property damage", "personal injury", or "advertising injury" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. That an insured would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury", "property damage", "personal injury", or "advertising injury" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury", "property damage", "advertising injury" or "personal injury" provided:

    a.  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b.  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### E. EXPECTED OR INTENDED "BODILY INJURY" AND "PROPERTY DAMAGE"

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

## F. ALCOHOLIC BEVERAGES

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

    (a) The supervision, hiring, employment, training, or monitoring of others by that insured; or

    (b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph 1., 2., or 3. above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

## G. POLLUTION

1. "Bodily injury", "property damage", "advertising injury", or "personal injury" which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

   This exclusion does not apply to "bodily injury", "property damage", "advertising injury", or "personal injury" arising out of heat, smoke, or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

   a. At any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing, or treatment of waste; or

   b. At any premises, site, or location on which any insured or any contractors or subcontractors, working directly or indirectly, on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of, "pollutants".

   This exclusion does not apply to "bodily injury", "property damage", "advertising injury", or "personal injury" arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception does not apply if the "bodily injury", "property damage", "advertising injury", or "personal injury" arises out of the intentional discharge, dispersal or release of fuels, lubricants, or other operating fluids, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such insured, contractor, or subcontractor.

2. Any loss, cost, or expense arising out of any:

   a. Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Liability Coverage Part**

b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## H. ASBESTOS

"Bodily injury", "property damage", "personal injury", or "advertising injury" of any nature whatsoever, based on, caused by, attributable to, related to, or in any manner and at any time arising out of:

1. The use, installation, storage, withdrawal, removal, encapsulation, destruction, containment, testing, distribution, ownership, sale, or disposal of asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

2. Exposure to asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings, or advice given, or which should have been given, in connection with asbestos, asbestos dust, asbestos fibers, or material containing asbestos; or

4. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of asbestos.

## I. ROT, MOLD, MILDEW, OR OTHER FUNGI

"Bodily injury", "property damage", "personal injury", or "advertising injury" based upon or arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, or , required removal or abatement of fungi, rot, mold, or mildew regardless of whether such rot, mold, mildew, or other fungi, ensues from any cause or condition, concurrently or in any sequence on, at, under, or emanating from, or to, the "premises", including but not limited to any such cause or condition involving the presence, discharge, or infiltration of moisture, vapor, water, or any other liquid, or any damage related to any of these.

Any loss, cost, or expenses arising out of the testing for, monitoring, disposing of, or in any way responding to, or assessing the effects of fungi, rot, mold, or mildew by any insured or by any other person or entity.

## J. "AUTO"

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any "auto" owned, or operated by, or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

1. Parking an "auto" on, or on the ways next to, property you own or rent, provided the "auto" is not owned by, or rented, or loaned to you or the insured; or

2. "Bodily injury" or "property damage" arising out of the operation of "mobile equipment".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use, or entrustment to others of any "auto" that is owned or operated by or rented or loaned to any insured.

## K. AIRCRAFT AND WATERCRAFT LIABILITY

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, "unmanned aircraft", or watercraft owned, chartered, or operated by, or rented, or loaned to any insured. Use includes operation and "loading or unloading".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Liability Coverage Part

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use, or entrustment to others of any aircraft, "unmanned aircraft", or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

1. Any watercraft while ashore on premises you own or rent;

2. A watercraft you do not own that is:

   a. Less than 50 feet long; and

   b. Not being used to carry persons or property for a charge.

3. Liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft, "unmanned aircraft", or watercraft.

## L. "MOBILE EQUIPMENT"

"Bodily injury" or "property damage" arising out of:

1. The transportation of "mobile equipment" by an "auto" owned, or operated by, or rented or loaned to any insured; or

2. The use of "mobile equipment" in, or while in practice for or while being prepared for, any prearranged racing, speed, demolition contest, or stunting activity.

## M. "WAR"

"Bodily injury" or "property damage" due to "war" or any act or condition incidental to "war".

## N. NUCLEAR ENERGY

Under any Liability Coverage, "bodily injury", "property damage", "advertising injury", or "personal injury":

1. With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Energy Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   a. Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law that amends it; or

   b. The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any of its agencies, under any agreement entered into by the United States of America, or any of its agencies, with any person or organization.

3. Resulting from the "hazardous properties" of "nuclear material" if:

   a. The "nuclear material" is at any "nuclear facility" owned by, or operated by, or on behalf of an insured or has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported, or disposed of, by or on behalf of, an insured; or

   c. The loss, including all forms of radioactive contamination of property, arises out of "bodily injury", "property damage", "advertising injury", or "personal injury" arises out of the furnishing by an insured of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any "nuclear facility", but if such facility is located within the United States of

Includes copyrighted material of Insurance Services Office, Inc. with its permission

America, its territories or possessions or Canada, this exclusion c. applies only to "property damage" to such "nuclear facility" and any property threat.

## O. "EMPLOYERS LIABILITY"

1. "Bodily injury" to:

   a. An "employee" of the insured arising out of and in the course of:

      (1) Employment by the insured; or

      (2) Performing duties related to the conduct of the insured's business; or

   b. The spouse, child, parent, brother, or sister of that "employee" as a consequence of subparagraph a. above.

2. This exclusion applies:

   a. Whether the insured may be liable as an employer or in any other capacity; and

   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by any insured under an "insured contract".

## P. DAMAGE TO PROPERTY

1. "Property damage" to:

   a. Property which:

      (1) you own, rent, or occupy;

      (2) you or your community manager acting on your behalf are legally responsible to monitor or maintain.

   b. Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;

   c. Property loaned to you;

   d. Personal property in the care, custody, or control of the insured;

   e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   f. That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

2. Paragraph 1.b. of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

3. Paragraphs 1.c., 1.d., 1.e., and 1.f. of this exclusion do not apply to liability assumed under a "sidetrack agreement".

4. Paragraph 1.f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

## Q. DAMAGE TO "YOUR PRODUCT" OR "YOUR WORK"

1. "Property damage" to "your product" arising out of it or any part of it.

2. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Liability Coverage Part**

This exclusion does not apply to 2. above if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## R. DAMAGE TO "IMPAIRED PROPERTY" OR PROPERTY NOT PHYSICALLY INJURED

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## S. RECALL OF PRODUCTS, WORK, OR IMPAIRED PROPERTY

Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

1. "Your product";

2. "Your work"; or

3. "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

## T. CERTAIN ACTS CAUSING "PERSONAL INJURY" AND "ADVERTISING INJURY"

"Personal injury" or "advertising injury":

1. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

2. Arising out of oral or written publication of material whose first publication took place before the beginning of the "policy period";

3. Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

4. For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in absence of the contract or agreement;

5. Arising out of the knowing violation of the rights of another caused by or at the direction of the insured with the knowledge that the act would inflict "personal injury" or "advertising injury"; or

6. Arising out of discrimination that first took place before the beginning of the "policy period".

## U. CERTAIN ACTS CAUSING "PERSONAL INJURY"

"Personal injury" arising out of:

1. Any advertising, publishing, broadcasting, or telecasting done by or for you;

2. Humiliation or discrimination when arising out of the willful violation of any civil rights law whether federal, state, or local ordinance. This includes but is not limited to discrimination on account of race, religion, sex, age, familial status, or handicap; or

3. Humiliation or discrimination when committed by or with knowledge or consent of any insured.

## V. CERTAIN ACTS CAUSING "ADVERTISING INJURY"

"Advertising injury" arising out of:

1. Breach of contract, other than misappropriation of advertising ideas under an implied contract;

2. The failure of goods, products, or services to conform with advertised quality or performance;

3. The wrong description of the price of goods, products, or services; or

4. An "offense" committed by an insured whose business is advertising, broadcasting, publishing, or telecasting.

## W. DAMAGES RELATING TO GARAGE AND PARKING AREA LEGAL LIABILITY

1. "Property damage" arising out of:

   a. Liability resulting from any agreement by which the insured accepts responsibility for "property damage";

   b. Theft or conversion caused in any way by the insured;

   c. Defective parts or materials; or

   d. Faulty work you performed. This includes work someone performed for you.

2. "Property damage" to any of the following:

   a. "Auto equipment" which is not permanently installed in the:

      (1) "Auto" by the manufacturer of the "auto" or by an authorized representative of the manufacturer; or

      (2) Dash or console opening designed by the "auto" manufacturer for the installation of such equipment;

   b. "Media".

## X. INJURY RELATING TO "NONOWNED AUTO" AND "HIRED AUTO"

1. "Bodily injury":

   a. To an "employee" of the insured arising out of and in the course of employment by the insured; or

   b. To the spouse, child, parent, brother, or sister of that "employee" as a consequence of subparagraph 1. above.

2. This exclusion applies:

   a. Whether the insured may be liable as an employer or in any other capacity; and

   b. To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to liability assumed by an insured under an "insured contract".

## Y. DAMAGE RELATING TO "NONOWNED AUTO" AND "HIRED AUTO"

"Property damage" to:

1. Property owned or being transported by, or rented or loaned to the insured; or

2. Property in the care, custody, or control of the insured.

## Z. EXPENSES RELATING TO MEDICAL PAYMENTS

"Bodily injury":

1. To any insured other than a unit owner or a member of the unit owner's family residing in the unit;

2. To any unit owner or a member of the unit owner's family residing in the unit for injuries occurring on that portion of the premises which is owned or maintained solely by the unit owner;

3. To a person hired to do work for or on behalf of any insured or a tenant of any insured;

4. To a person injured on that part of property you own or rent that the person normally occupies;

5. To a person while taking part in athletics;

6. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation, or disability benefits law, or a similar law;

7. Included within the "products-completed operations hazard"; or

8. Due to "war" or any act or condition incidental to "war".

## AA. "CYBER LIABILITY"

1. "Bodily injury", "property damage", "personal injury", or "advertising injury", directly or indirectly, arising out of, caused by, contributed to, or resulting from any:

   a. Functioning, nonfunctioning, improperly functioning, availability, or unavailability of:

      (1) The internet or similar facility;

      (2) Any intranet, or private network, or similar facility; or

      (3) Any website, bulletin board, chat room, search engine, portal, or similar third party application service.

   b. Alteration, corruption, destruction, distortion, erasure, "theft", or other loss of or damage to "data", software, information repository, microchip, integrated system, or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set; or

   c. Loss of use or functionality, whether partial or entire, of "data", coding, program, software, any computer, or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of any insured to conduct business.

   d. Unauthorized use of, or unauthorized access to electronic "data" or software within your network or business.

   e. Unauthorized access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets processing methods, customer lists, financial information, credit card information, health information, or any other type of non- public information.

   f. Any requirement to incur expenses for the notification or credit monitoring of affected parties whose confidential or personal information was compromised or any other related cost or expense.

2. "Bodily injury" directly or indirectly arising out of, caused by, contributed to, or resulting from any electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

## BB. SPECIFIED ACTIVITIES

"Bodily injury", "property damage", "personal injury", or "advertising injury", directly or indirectly arising out of, caused by, or resulting from the activities or operations listed below, regardless of whether such activities or operations are conducted by you or on your behalf, or whether the activities or operations are conducted for yourself or others:

1. Armed security or guard dog services;

2. Hunting or archery;

3. Indoor or outdoor pistol, trap, or skeet shooting ranges;

4. Day care, medical, first aid or nursing facilities;

5. All-terrain vehicles, ski areas, skiing activities, snowmobiling, parasailing, water skiing, or water ski jets;

6. Saddle animals, horseback riding clubs or any other equestrian activities or facilities; and

7. Beauty, salon, and spa facilities, products, and services including but not limited to therapeutic, massage, wellness, aesthetic, tanning, facials, body treatments, aromatherapy and personal beautification services.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Liability Coverage Part**

## CC. ABUSE AND MOLESTATION EXCLUSION

"Bodily injury", "property damage" or "personal injury", and "advertising injury" arising out of, caused by, or resulting from:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to the proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

## DD. EARTH MOVEMENT

"Bodily Injury" or "property damage" arising out of, based upon, or in any way related to:

1. Earthquake, including any earth sinking, rising, or shifting related to such event; tremors, or aftershocks;

2. Landslide, including any earth sinking, rising, or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking, rising or shifting including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil, and the action of water under the ground surface;

5. Slope failure;

6. "Mudslide" or "Mudflow";

7. "Volcanic eruption"; and

8. "Sinkhole collapse".

This exclusion applies whether the earth movement is caused, in whole or in part, by natural or manmade conditions.

## EE. NUCLEAR, BIOLOGICAL, CHEMICAL, AND RADIOLOGICAL HAZARDS

"Bodily injury", "property damage", "personal injury", or "advertising injury" that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

1. Nuclear Hazard – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

2. Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

3. Chemical Hazard – including, but not limited to, any chemical agent, material, product or substance; and

4. Radioactive Hazard – including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Liability Coverage Part

The provisions of subparagraphs 2. and 3. will not apply where the agent, material, product, or substance at issue is utilized in the course of business by an insured.

**FF. RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW**

"Bodily injury", "property damage", "personal injury", or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

## XII. GENERAL LIABILITY WHO IS AN INSURED SECTION

**No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the "Declarations".**

**A. WHO IS AN INSURED - "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", "ADVERTISING INJURY", AND MEDICAL PAYMENTS**

1. With respect to VII.A. "BODILY INJURY" AND "PROPERTY DAMAGE", VII.B. "PERSONAL INJURY" AND "ADVERTISING INJURY", and IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION each of the following is an insured:

   a. You.

   b. Your directors and "officers", and "committee members", but only with respect to their duties as such.

   c. Your legal representative, if you cease to exist as a legal entity, but only with respect to their duties as such. That representative will have all your rights and duties under GENERAL LIABILITY.

   d. Any person, other than your "employee", or any organization while acting as your community manager.

   e. Your individual unit owners, but only for liability arising out of the ownership, maintenance, or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

   f. Your "employees", other than your directors and "officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury" to you or to a "coemployee" while in the course of their employment, or the spouse, child, parent, brother, or sister of that "coemployee" as a consequence of such "bodily injury" or "personal injury", or for any obligation to share damages with or repay someone else who must pay damages because of injury; or

      (2) Any obligation to share damages with or repay someone else who must pay damages because of the injury described in (1) above; or

      (3) "Property damage" to property:

         (a) Owned, occupied, or used by;

         (b) Rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by you or any of your "employees".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

g. Any person or organization, having proper temporary custody of your property if you cease to exist as a legal entity, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

h. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

(1) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

(2) Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

(3) Coverage does not apply to "personal injury" or "advertising injury" arising out of any "offense" committed before you acquired or formed the organization.

i. Any person is an insured while driving "mobile equipment" along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability.

However, no person or organization is an insured with respect to:

(1) "Bodily injury" to a "co-employee" of the person driving the equipment; or

(2) "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

j. Any person or organization, from whom you lease or rent equipment or personal property, other than "autos", when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased or rented to you by such person or organization. Except for coverage for the "products-completed operations hazard", such person's or organization's status as an insured ends when their contract or agreement with you for such leased equipment ends.

This insurance does not apply:

(1) To any "occurrence" which takes place after the lease or rental period expires;

(2) To "bodily injury" or "property damage" arising out of the sole negligence of such person or organization.

2. However, any community manager, director, "officer", "committee member", "employee", or unit owner who is or was affiliated in any capacity with your builder, developer, or sponsor, is not an insured for any claim or "suit" however alleged or pleaded, seeking damages for "bodily injury," "property damage," "personal injury" or "advertising injury" arising from, related to, or caused, in whole or in part, by faulty, inadequate, defective, or negligent design or construction of any property, including any allegation in such claim or "suit" of failure to maintain, repair, or replace such property.

## B. WHO IS AN INSURED - "HIRED AUTO" AND "NONOWNED AUTO"

1. With respect to VI.C. "HIRED AUTO" AND "NONOWNED AUTO" each of the following is an insured:

a. You.

b. Any other person using a "hired auto" with your permission, but only while such "hired auto" is being used in your operations.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Liability Coverage Part**

    c.  Your directors and "officers", for a "nonowned auto", but only while such "nonowned auto" is being used in your operations.

    d.  Your "employees", for a "nonowned auto", but only while such "nonowned auto" is being used in your operations.

    e.  Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b., c., or d. above.

  2.  With respect to VI.C. "HIRED AUTO" AND "NONOWNED AUTO" none of the following is an insured:

    a.  Any person engaged in the business of their employer for "bodily injury" to any "coemployee" of such person injured in the course of employment.

    b.  Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate.

    c.  The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner, other than your directors, "officers", or "employees", of a "nonowned auto" or any agent or "employee" of any such owner or lessee.

    d.  Your builder, developer, or sponsor or any person or organization affiliated with your builder, developer, or sponsor in any capacity.

## C.  WHO IS AN INSURED - GARAGE AND PARKING AREA LEGAL LIABILITY

  1.  With respect to VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION each of the following is an insured:

    a.  You.

    b.  Your directors and "officers" and "employees", but only with respect to their duties as such.

    c.  Your legal representative, if you cease to exist as a legal entity, but only with respect to their duties as such. That representative will have all your rights and duties under GENERAL LIABILITY.

    d.  Any other person, other than your "employee", or organization, while acting as your community manager.

    e.  Your "employees", other than your directors and "officers", but only for acts within the scope of their employment by you.

  2.  With respect to VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY none of the following is an insured:

    Your builder, developer, or sponsor or any person or organization affiliated with your builder, developer, or sponsor in any capacity.

## XIII. GENERAL LIABILITY CONDITIONS SECTION

**GENERAL LIABILITY coverage is subject to the following conditions.**

## A.  BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under GENERAL LIABILITY.

## B.  YOUR DUTIES IN THE EVENT OF "OCCURRENCE", "OFFENSE", CLAIM, OR "SUIT"

Failure to perform these duties will impair your rights under GENERAL LIABILITY or could result in the denial of coverage and defense.

  1.  You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim to which this insurance applies. To the extent possible notice should include:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

a. How, when, and where the "occurrence" or "offense" took place;

b. The names and addresses of any injured persons and witnesses; and

c. The nature and location of any injury or damage arising out of the "occurrence" or "offense".

2. If a claim is made or "suit" is brought against any insured, you must:

a. Immediately record the specifics of the claim or "suit" and the date received; and

b. Notify us as soon as practicable. You must see to it that we receive prompt written notice of the claim or "suit".

3. You and any other involved insured must:

a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement, or defense of the claim or "suit"; and

d. Assist us, upon request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our prior written consent.

## C. LEGAL ACTION AGAINST US

No person or organization has a right under GENERAL LIABILITY:

1. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

2. To bring "suit" against us on GENERAL LIABILITY unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an "agreed settlement" or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of GENERAL LIABILITY or that are in excess of the applicable limit of insurance.

## D. SEPARATION OF INSUREDS - CROSS LIABILITY

Except with respect to the limit of insurance, and any rights or duties specifically assigned in GENERAL LIABILITY to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each insured against whom a claim is made or a "suit" is brought.

## E. OTHER INSURANCE

This insurance is excess over any valid insurance whether primary, excess, contingent, or any other basis. However, this provision does not apply to any other insurance that is written as specific excess over this insurance.

1. This insurance is also excess over:

a. Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

b. Insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with the permission of the owner;

c. Insurance that is not subject to XI. GENERAL LIABILITY EXCLUSIONS SECTION, J. "AUTO" and K. AIRCRAFT AND WATERCRAFT LIABILITY of this Liability Coverage Part, but only if the loss arises out of the maintenance or use of aircraft, "unmanned aircraft", "autos", or watercraft.

   d. Any other primary insurance available to you covering liability for damages arising out of any premises or operations for which you have been added as an additional insured.

2. Other insurance will be deemed valid regardless of:

   a. Any defense asserted by any other insurer because of the insured's failure to comply with the terms of that insurance; or,

   b. The inability of any other insurer to pay because of bankruptcy or insolvency.

3. With respect to IX. GENERAL LIABILITY MEDICAL PAYMENTS SECTION, this insurance is also excess over any other health care benefits or services that are directly or indirectly available to the injured person.

4. With respect to VIII. GENERAL LIABILITY GARAGE AND PARKING AREA LEGAL LIABILITY SECTION, this insurance is excess only when such operations are conducted as a separate business operation by any person or organization not described in XII. GENERAL LIABILITY WHO IS AN INSURED SECTION, C. GARAGE AND PARKING AREA LEGAL LIABILITY.

5. When this insurance is excess:

   a. We will pay only our share of the amount of any judgment or settlement that exceeds the sum of:

     (1) the total amount that all such other insurance would pay for the such judgment or settlement in the absence of this insurance; and

     (2) the total of all deductibles and self insured amounts under all such other insurance.

   b. We will have no obligation to defend or to provide for any defense; and,

   c. We will not pay any amount for "defense costs" or any similar costs. This provision applies whether or not any other insurance would pay "defense costs", or any similar costs, under any circumstances.

   d. We will share the remaining amount of any judgment or settlement, if any, that is within the Limit of Liability for this Liability Coverage Part with any other insurance that is not described herein and was not purchased specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Liability Coverage Part.

6. Method of Sharing

If all of the other insurance permits contribution by equal shares, or is silent as to its method of sharing, we agree to follow the contribution by equal shares method. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance expressly does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## F. PREMIUM AUDIT

1. We will compute all premiums for this Liability Coverage Part in accordance with our rules and rates.

2. If the premium for this Liability Coverage Part is subject to audit, at the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the "policy period" is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**Liability Coverage Part**

### G. REPRESENTATIONS

By accepting this policy, you agree:

1. The statements in the "Declarations" are accurate and complete;

2. Those statements are based upon representations you made to us; and

3. We have issued this policy in reliance upon your representations.

### H. ACTS OR OMISSIONS BY UNIT OWNERS

No act or omission by any unit owner will void the policy or be a condition to recovery under this policy. However, this does not apply to unit owners acting within the scope of their authority on your behalf.

This does not supersede any exclusions contained in this policy.

### I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1. If the insured has rights to recover all or part of any payment we have made under this Liability Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request the insured will bring "suit" or transfer those rights to us and help us enforce them.

2. We waive any rights which this condition may give us against all of the following:

   a. Any unit owner and residing household members.

   b. You.

   c. Your directors, "officers", or "committee members" for acts or omissions within the scope of their duties for you.

We reserve our right, however, to recover against the developer for acts or omissions that the developer may be liable for in the capacity as a developer.

## XIV. GENERAL LIABILITY LIMITS OF INSURANCE SECTION

The limits of insurance shown in the "Declarations" and the provisions of this section determine the most we will pay for damages regardless of the number of insureds and additional insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suit".

A. The PRODUCTS/COMPLETED OPERATIONS "aggregate limit" of insurance shown in the "Declarations" is the most we will pay under VII.A. "BODILY INJURY" AND "PROPERTY DAMAGE" for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" arising from all "occurrences" during the "policy period".

Each payment we make for such damages reduces the PRODUCTS/COMPLETED OPERATIONS "aggregate limit" of insurance by the amount of the payment. This reduced limit will then be the limit of insurance available for further damages of this type during the "policy period".

B. The "PERSONAL INJURY" AND "ADVERTISING INJURY" limit of insurance shown in the "Declarations" is the most we will pay for the sum of all damages under VII.B. "PERSONAL INJURY" AND "ADVERTISING INJURY" because of all "personal injury" and all "advertising injury" sustained by any one person or organization arising out of any one "offense".

C. Subject to A. above, the "BODILY INJURY" AND "PROPERTY DAMAGE" limit of insurance shown in the "Declarations" is the most we will pay for the sum of damages under VII.A. "BODILY INJURY" AND "PROPERTY DAMAGE" arising out of any one "occurrence".

D. Subject to C. above, the "HIRED AUTO" AND "NONOWNED AUTO" limit of insurance shown in the "Declarations" is the most we will pay for the sum of damages because of all "bodily injury" or "property damage" arising out of any one "occurrence" covered under VII.C. "HIRED AUTO" AND "NONOWNED AUTO".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Liability Coverage Part

E.  Subject to C. above, the PROPERTY DAMAGE LEGAL LIABILITY - REAL PROPERTY limit of insurance shown in the "Declarations" is the most we will pay for "property damage" arising out of any one "occurrence" covered under VII.D. PROPERTY DAMAGE LEGAL LIABILITY - REAL PROPERTY.

F.  Subject to C. above, the GARAGE AND PARKING AREAS LEGAL LIABILITY limits of insurance shown in the "Declarations" is the most we will pay for "property damage" covered under VIII. GARAGE AND PARKING AREA LEGAL LIABILITY SECTION for:

1.  Comprehensive Coverage in excess of the applicable deductible.

2.  Collision Coverage in excess of the applicable deductible.

G.  Subject to C. above, the MEDICAL PAYMENTS per accident limit of insurance shown in the "Declarations" is the most we will pay under IX. MEDICAL PAYMENTS SECTION for all "medical expenses" because of "bodily injury" arising out of any one "occurrence" sustained by any one person.

The limits of insurance of this LIABILITY COVERAGE PART apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the "Declarations", unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the limits of insurance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Common Policy Conditions

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations". "We", "us", and "our" refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to XVI. DEFINITIONS SECTION.

## XV.  COMMON POLICY CONDITIONS SECTION

All Coverage Parts are subject to the following conditions.

### A. CANCELLATION

1. The first Named Insured shown in the "Declarations" may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice of cancellation to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due.

    a. If we cancel, or if cancellation is at our request, the refund will be pro rata.

    b. Otherwise, the refund will be 90% of pro rata.

6. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

### B. NONRENEWAL

1. The first Named Insured may nonrenew this policy by mailing or delivering to us advance written notice of nonrenewal.

2. We may nonrenew this policy by mailing or delivering to the first Named Insured written notice of nonrenewal at least 30 days before the policy expiration date.

3. We will mail or deliver our notice of nonrenewal to the first Named Insured's last mailing address known to us.

4. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

### C. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Common Policy Conditions

### D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the "policy period" and up to three years afterward.

### E. INSPECTIONS AND SURVEYS

1. We have the right but are not obligated to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

   We do not:

   a. Make safety inspections;

   b. Undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public; or

   c. Warrant that conditions are safe or healthful, or comply with laws, regulations, codes, or standards.

This condition applies not only to us, but also to any rating advisory, rate service, or any organization which makes insurance inspections, surveys, reports, or recommendations on our behalf.

### F. PREMIUMS

The first Named Insured:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums.

### G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent.

If you cease to exist, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

### H. COVERAGE UNDER TWO OR MORE COVERAGE PARTS

If a loss is covered under two or more of this policy's Coverage Parts, only the Coverage Part affording the most favorable coverage from the standpoint of the claimant will apply.

### I. NOTICE OF CLAIM

The first Named Insured is responsible to act on behalf of all insureds with respect to the giving and receiving of notice of claim.

### J. TITLES OF PARAGRAPHS

The titles of the varied paragraphs of this policy and endorsements, if any, attached to this policy, are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect provisions to which they relate.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

**Common Policy Conditions**

**K. VOLUNTARY PAYMENTS**

No insured nor anyone acting on the behalf of any insured may, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid and any other expenses specifically allowed in this policy, without our prior written consent.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

# Definitions

Throughout this policy the words "you" and "your" refer to the named insured shown in the "Declarations". "We", "us" and "our" refer to the company providing this insurance. Words and phrases that appear in quotation marks have special meaning.

## XVI. DEFINITIONS SECTION

Entries in parentheses indicate Policy Coverage Parts to which defined terms apply.

1.  **"Advertising injury"** (GENERAL LIABILITY) means injury arising out of one or more of the following "offenses":

    a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.  Oral or written publication of material that violates a person's right of privacy;

    c.  Misappropriation of advertising ideas or style of doing business; or

    d.  Infringement of copyright, title or slogan.

    However, "advertising injury" does not include liability arising out of "cyber liability".

2.  **"Aggregate limit(s)"** (GENERAL LIABILITY) means the maximum amount stated in the policy for which the insurer will be liable regardless of the number of covered claims.

3.  **"Agreed settlement"** (GENERAL LIABILITY) means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

4.  **"Auto(s)"** (PROPERTY, GENERAL LIABILITY) means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

5.  **"Auto business"** (GENERAL LIABILITY) means the business or occupation of selling, repairing, servicing, storing, or parking of "autos".

6.  **"Auto equipment"** (GENERAL LIABILITY) means any equipment used in connection with the "auto", in or on the "auto", including audio, visual, and informational transmitting, receiving and reproducing equipment such as:

    a.  Tape decks, disc players or other sound and picture reproducing equipment,

    b.  Sound transmitting and receiving equipment designed for use as a citizens band radio, two-way mobile radio, or telephone or scanning monitor receiver, including its antennas and other accessories,

    c.  Electronic data processing equipment and facsimile and document transmitting and receiving equipment.

7.  **"Banking premises"** (PROPERTY) means a bank, savings institution, or similar depository.

8.  **"Bodily injury"** (GENERAL LIABILITY) means:

    a.  Injury to the body, sickness or disease, disability or shock, mental anguish, humiliation, or mental injury sustained by any person, including death resulting from any of these at any time.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

   b. Injury resulting from assault and battery solely from the use of reasonable force when committed by you or at your direction for the purpose of protecting persons or property.

   c. Bodily injury includes damages claimed by any person or organization for care, loss of service, or death resulting at any time from the "bodily injury".

But "bodily injury" does not mean "bodily injury" arising out of any "offense".

9. **"By-product material"** (GENERAL LIABILITY) means the meaning given to it in the Atomic Energy Act of 1954 or in any amendatory law.

10. **"Collapse"** (PROPERTY) means an abrupt falling down, caving in, or flattening of a building, structure, or of any part of a building or structure with the result that the building, structure or the collapsed part of either cannot be occupied for its intended purpose. However:

   a. A building, structure or any part of either that is in danger of falling down or caving in is not considered to be in a state of collapse. This provision applies even if the building has been:

     (1) Declared by civil authority or by a person technically qualified to do so to be in an imminent state of collapse;

     (2) Condemned for occupancy for its intended purpose; or,

     (3) Ordered evacuated in anticipation of imminent collapse.

   b. A part of a building or structure that is standing is not considered to be in a state of collapse even if it has separated from another part of the building or structure.

   c. None of the following is considered to be in a state of "collapse" even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion:

     (1) A building, structure or part of either that is standing; or

     (2) Personal property.

11. **"Committee"** (PROPERTY, GENERAL LIABILITY) means a body of persons duly delegated by the Named Insured's board of directors or functional equivalent thereof, to consider, investigate, take action on, or report on a matter; or established by the Named Insured's governing documents.

12. **"Committee member"** (PROPERTY, GENERAL LIABILITY) means a duly elected or appointed member of a "committee".

13. **"Computer equipment"** (PROPERTY, GENERAL LIABILITY) means "Covered Property" that is an electronic computer or other data processing equipment, including peripherals used in conjunction with such equipment, and electronic media and records.

14. **"Computer fraud"** (PROPERTY) means "theft" of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises" to a person, other than a "messenger", outside those "premises" or to a place outside those "premises".

With regard to "computer fraud", occurrence means an:

   a. Act or series of related acts involving one or more persons; or

   b. Act or event, or a series of related acts, or a series of related acts or events not involving any person.

15. **"Coverage territory"** (PROPERTY) means, unless otherwise specified, the following:

   a. The United States of America (including its territories and possessions);

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

    b.  Puerto Rico; and

    c.  Canada.

16. **"Coverage territory"** (GENERAL LIABILITY) means anywhere in the world if the insured's responsibility to pay damages is determined:

    a.  In a "suit" on the merits brought in a forum in the United States of America (including its territories and possessions), Puerto Rico or Canada; or

    b.  In a settlement we agree to.

17. **"Covered employee"** (PROPERTY) means:

    a.  Any natural person:

        (1)  While in your service (and for 30 days after termination of service);

        (2)  Whom you compensate directly by salary, wages, or commissions; and

        (3)  Whom you have the right to direct and control while performing services for you.

    b.  Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you. However, any such person is excluded while having care and custody of property outside the "premises".

    c.  Any natural person who is a duly elected or appointed director, trustee, "officer", "committee" volunteer, or "committee member", whether salaried or not, and any other person acting on behalf or at the direction of an "officer" or board of directors of your Association with the exception of the developer when acting in a capacity as the developer.

But "covered employee" does not include:

    a.  Other than your "employee" any person or any organization while acting as your community manager.

    b.  Any "employee" immediately upon discovery by:

        (1)  You; or

        (2)  Any of your "officers" and directors not in collusion with the "employee", director, "officer" or board member;

        of any dishonest act committed by that "employee", "officer", director or board member whether before or after being hired or appointed by you.

18. **"Covered instrument(s)"** (PROPERTY) means checks, drafts, promissory notes, or similar written promises, orders or directions to pay a certain sum in "money" and written instruments required in conjunction with any credit, debit, or charge card issued to you or any "employee" for business purposes that are:

    a.  Made or drawn by or drawn upon you;

    b.  Made or drawn by one acting as your agent;

    or that are purported to have been so made or drawn.

19. **"Covered property"** (PROPERTY, GENERAL LIABILITY) means property described in I. PROPERTY DIRECT COVERAGES SECTION for which a limit of insurance is shown in the "Declarations".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Definitions

20. **"Cyber liability"** (GENERAL LIABILITY) means liability that arises out of:

   a. The unauthorized use of, or unauthorized access to electronic "data" or software within your network or business;

   b. Functioning, nonfunctioning, improperly functioning, availability, or unavailability of:

      (1) The internet or similar facility;

      (2) Any intranet or private network or similar facility; or

      (3) Any website, bulletin board, chat room, search engine, portal or similar third party application service.

   c. Alteration, corruption, destruction, distortion, erasure, "theft", or other loss of or damage to "data", software, information repository, microchip, integrated system, or similar device in any computer equipment or non-computer equipment or any kind of programming or instruction set; or

   d. Loss of use or functionality, whether partial or entire, of "data", coding, program, software, any computer, or computer system or other device dependent upon any microchip or embedded logic and any ensuing inability or failure of any insured to conduct business.

21. **"Data"** (PROPERTY, GENERAL LIABILITY) means information or instructions used by computers or computerized equipment.

22. **"Declarations"** (PROPERTY, GENERAL LIABILITY) means any declarations comprising part of the policy.

23. **"Defense costs"** (GENERAL LIABILITY) means:

   a. All expenses we incur;

   b. The cost of bonds to appeal a judgment or award in any "suit" we defend;

   c. The cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which "bodily injury" liability coverage under this insurance applies. We do not have to furnish these bonds;

   d. The cost of bonds to release attachments, but only for bond amounts within the limit of insurance available under VIII. GENERAL LIABILITY LIMITS OF INSURANCE SECTION. We do not have to furnish these bonds;

   e. Reasonable expenses incurred by an insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work. "Defense costs" does not include salaries, wages, fees, hourly charges, or overhead of, or paid to, an insured.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

   (a) Cooperate with us in the investigation, settlement or defense of the "suit";

   (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   (c) Notify any other insurer whose coverage is available to the indemnitee; and

   (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provide us with written authorization to:

   (a) Obtain records and other information related to the "suit"; and

   (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorney's fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid. Notwithstanding the provisions of 2. of V.D. CERTAIN CONTRACTS, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorney's fees and necessary litigation expenses ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraphs f. (1) and f. (2) above, are no longer met.

24. **"Depositors forgery"** (PROPERTY) means loss resulting directly from forgery or alteration to a "covered instrument" including the use of electronic or facsimile signatures. It includes any reasonable legal expenses that you incur and pay if you are sued for refusing to pay any "covered instrument" on the basis that it has been forged or altered and you have our prior written consent to defend against the suit involving "depositors forgery".

There is no coverage for loss caused by legal proceedings including judgments, settlements and any related expenses.

With regard to "depositors forgery", occurrence means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

25. **"Employees"** also **"Coemployees"** (PROPERTY, GENERAL LIABILITY) includes a "leased worker". "Employee" does not include a "temporary worker".

26. **"Employee dishonesty"** (PROPERTY) means only dishonest or criminal acts committed by a "covered employee", whether identified or not, acting alone or in collusion with other persons, with the manifest intent to:

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

a.  Cause you to sustain loss; and also

b.  Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment) for:

    (1) The "covered employee"; or

    (2) Any person or organization intended by the "covered employee" to receive that benefit.

With regard to "employee dishonesty", occurrence means all loss caused by each "covered employee", whether the result of a single act or series of acts.

27. **"Employers liability"** (GENERAL LIABILITY) means liability arising out of any and all "bodily injury" by accident or "bodily injury" by disease to your employees. "Bodily injury" includes resulting death.

a.  The "bodily injury" must arise out of and in the course of the injured employee's employment by you.

b.  "Bodily injury" by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such "bodily injury" by disease must occur during the "policy period".

28. **"Equipment breakdown"** (PROPERTY) means the following:

a.  Physical loss or damage, caused by, resulting from, or consisting of:

    (1) Mechanical breakdown;

    (2) Electrical or electronic breakdown;

    (3) Rupture, bursting, bulging, implosion, or steam explosion.

    originating within:

        (a) Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

            (i) Waste disposal piping;

            (ii) Any piping forming part of a fire protective system; and

            (iii) Any water piping other than: boiler feed water piping between the feed pump, and the boiler, boiler condensate return piping, and, water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

        (b) All mechanical, electrical, electronic, or fiber optic equipment.

b.  However, "Equipment Breakdown" does not mean:

    (1) Physical loss or damage caused by or resulting from any of the following:

        (a) Wear and tear; or

        (b) Rust or other corrosion, decay, deterioration, hidden or latent defect, mold, or any other quality in property that causes it to damage or destroy itself; or

        (c) Smog; or

        (d) Settling, cracking, shrinking, or expansion; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

    (e) Nestling or infestation, or discharge or release of waste products or secretions, by birds, rodents, or other animals; or

    (f) Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of "data" by any computer system including any hardware, programs, or software; or

    (g) Scratching and marring.

However if loss or damage not otherwise excluded results, then we will pay for such resulting damage.

  (2) Any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following Causes of Loss:

Fire, lightning, combustion, explosion, wind or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, volcanic action, leakage from fire extinguishing equipment, water damage, earth movement, and "flood".

29. **"Fine arts"** (PROPERTY) means paintings, etchings, pictures, sculptures, tapestries, art glass windows, valuable rugs, statuary, antique furniture, and other bona fide works of art of rarity, historical value or artistic merit. Fine arts also include "furs" and "jewelry".

30. **"Flood"** (PROPERTY) means:

  a. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

    (1) Overflow of inland or tidal waters;

    (2) Unusual and rapid accumulation or run off of surface waters from any source;

    (3) "Mudflow" or "Mudslide".

  b. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a "flood" as defined in a. immediately above.

31. **"Furs"** (PROPERTY) means furs, fur garments and garments trimmed with fur.

32. **"Garage operations"** (GENERAL LIABILITY) means the ownership, maintenance, or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance, or use of "autos", "auto equipment", or "mobile equipment" left with you for service, repair, attending, storage, safekeeping, or parking. Garage operations also include all operations necessary or incidental to a garage business.

33. **"Hazardous properties"** (GENERAL LIABILITY) means hazardous properties including radioactive, toxic, or explosive properties.

34. **"Hired auto"** (GENERAL LIABILITY) means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any director or "officer" of yours.

35. **"Hostile fire"** (PROPERTY, GENERAL LIABILITY) means a fire which becomes uncontrollable or breaks out from where it was intended to be.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

# Definitions

36. **"Impaired property"** (GENERAL LIABILITY) means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment, or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

37. **"Incidental medical malpractice"** (GENERAL LIABILITY) means "bodily injury" arising out of the rendering of or failure to render the following services:

   a. Furnishing food, beverages, office space or building facilities in connection with any medical, surgical, dental, x-ray, pharmaceutical, or nursing service, or treatment; or

   b. The furnishing or dispensing of drugs, medical, dental, or surgical supplies or appliances.

   Incidental medical malpractice does not cover any insured engaged in the business, profession, or occupation of providing any of the services described under a. and b. above.

38. **"Insured contract"** (GENERAL LIABILITY) means:

   a. A lease of premises;

   b. A "sidetrack agreement";

   c. An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

   d. Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   e. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   f. An elevator maintenance agreement;

   g. That part of any contract or agreement entered into, as part of your operations, by you, your directors, officers, or employees pertaining to the rental or lease of any "auto"; or

   h. That part of any other contract or agreement pertaining to your operations, including an indemnification of a municipality in connection with work performed for a municipality, under which you assume the "tort liability" of another to pay damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to a third person or organization, if the contract or agreement is made prior to the "bodily injury", "property damage", "personal injury", or "advertising injury".

   An "insured contract" does not include that part of any contract or agreement:

   a. That indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

      (1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# Definitions

(2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

b.  Under which the insured, if an architect, engineer, or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in a. above and supervisory, inspection, architectural, or engineering services; or

c.  That pertains to the loan, lease or rental of an "auto" to you, your directors," officers", or "employees", if the "auto" is loaned, leased, or rented with a driver; or

d.  That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority;or

e.  That provides indemnification for any "bodily injury", "property damage", "personal injury", and "advertising injury" caused by an "occurrence" or by an "offense" committed by any person or organization that is not an insured person under VI. GENERAL LIABILITY – WHO IS AN INSURED SECTION.

39. **"Jewelry"** (PROPERTY) means jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum, and other precious alloys or metals. However, jewelry does not include watches costing $100 or less to replace per item.

40. **"Leased workers"** (PROPERTY, GENERAL LIABILITY) means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

41. **"Loading or unloading"** (GENERAL LIABILITY) means the handling of property:

a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, "unmanned aircraft", watercraft, or "auto";

b.  While it is in or on an aircraft, "unmanned aircraft", watercraft, or "auto"; or

c.  While it is being moved from an aircraft, "unmanned aircraft", watercraft, or "auto" to the place where it is finally delivered;

But does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, "unmanned aircraft", watercraft, or "auto".

42. **"Media"** (PROPERTY, GENERAL LIABILITY) means material on which "Data" is recorded, such as magnetic tapes, hard disks, optical disks, CD-ROMS, drives, cells, floppy disks, or other data processing devices.

43. **"Medical expenses"** (GENERAL LIABILITY) means:

a.  First aid at the time of an accident;

b.  Necessary medical, surgical, x-ray, and dental services, including prosthetic devices; and

c.  Necessary ambulance, hospital, professional nursing, and funeral services.

44. **"Messenger"** (PROPERTY) means you or any "employee" while having care and custody of the property outside the "premises".

45. **"Mobile equipment"** (GENERAL LIABILITY) means a land vehicle (including any machinery or apparatus attached to it), whether or not it is self-propelled, which is:

a.  Not subject to motor vehicle registration; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

b. Maintained for use exclusively on "premises" owned by or rented to you; or,

c. Designed for use principally off public roads; or

d. Designed or maintained for the sole purpose of affording mobility to equipment of the following types which form an integral part of or are permanently attached to such vehicle: power cranes, shovels, loaders, diggers, drills, concrete mixers, (other than the mix-in-transit type), graders, scrapers, rollers and other road construction or repair equipment, air-compressors, pumps, generators, including spraying, welding and building cleaning equipment, and geophysical exploration and well servicing equipment.

46. **"Money"** (PROPERTY) means:

a. Currency, coins, and bank notes in current use and having a face value; and

b. Travelers checks, registered checks, and money orders held for sale to the public.

With regard to "money", occurrence means an:

a. Act or series of related acts involving one or more persons; or

b. Act or event, or a series of related acts or a series of related acts or events not involving any person.

47. **"Mudflow"** (PROPERTY, GENERAL LIABILITY) means a river of liquid and flowing mud on the surface of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current.

48. **"Mudslide"** (PROPERTY, GENERAL LIABILITY) means the movement of a volume of mud and all other matter carried along with the mud.

49. **"New information"** (PROPERTY) means information which is received by us for the first time from anyone.

50. **"Nonowned auto"** (GENERAL LIABILITY) means any "auto" you do not own, lease, hire, or borrow which is used in connection with your operations.

51. **"Nuclear facility"** (GENERAL LIABILITY) means:

a. Any "nuclear reactor";

b. Any equipment or device designed or used for:

(1) Separating the isotopes of uranium or plutonium;

(2) Processing or utilizing "spent fuel"; or

(3) Handling, processing or packaging "waste";

c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; "Nuclear facility" includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

52. **"Nuclear material"** (GENERAL LIABILITY) means "source material", "special nuclear material", or "by-product material".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

53. **"Nuclear reactor"** (GENERAL LIABILITY) means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

54. **"Occurrence(s)"** (GENERAL LIABILITY) means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

55. **"Offense(s)"** (GENERAL LIABILITY) means an act, utterance, or publication, including the continuation or repetition of the same act, utterance, or publication.

56. **"Officer(s)"** (PROPERTY, GENERAL LIABILITY) means a person holding any of the officer positions created by your charter, constitution, bylaws, or any similar governing document.

57. **"Period of restoration"** (PROPERTY) means the period of time that:

    a. Begins with the date of direct physical loss or damage caused by or resulting from any COVERED CAUSE OF LOSS at the described "premises"; and

    b. Ends on the date when the property at the described "premises" should be repaired, rebuilt, or replaced with reasonable speed and similar quality.

    "Period of restoration" does not include any increased period required due to the enforcement of or compliance to any ordinance or law that:

    a. Regulates the construction, use or repair, or requires the tearing down of any property; or

    b. Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants".

    The expiration date of this policy will not shorten the "period of restoration".

58. **"Personal effects"** (PROPERTY) means items usually worn or carried on the person.

59. **"Personal injury"** (GENERAL LIABILITY) means injury, other than "bodily injury", arising out of one or more of the following "offenses":

    a. False arrest, detention, or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy of a room, "unit", dwelling, storage area, or premises that the person occupies by or on behalf of its owner, landlord, or lessor;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

    e. Oral or written publication of material that violates a person's right of privacy.

    f. Humiliation or discrimination.

    However, "personal injury" does not mean "personal injury" arising out of "cyber liability".

60. **"Policy period"** (PROPERTY, GENERAL LIABILITY) means the period from the inception to the expiration date of this policy, shown in the "Declarations" or until its termination in accordance with XXI.A. CANCELLATION.

61. **"Pollutant(s)"** (GENERAL LIABILITY) means any solid, liquid, gaseous, thermal or radioactive irritant or contaminant, including asbestos, radon, smoke, vapor, soot, fumes, carbon monoxide, acids, alkalis, chemicals, pathogens, poisons, and waste, all whether man-made or naturally occurring. Waste includes

## Definitions

materials to be recycled, reconditioned, or reclaimed, and wastewater runoff from fracking activities conducted on or adjacent to your "premises".

62. **"Pollutant(s)"** (PROPERTY) means any solid, liquid, gaseous, or thermal irritant or contaminant, including radon, smoke, vapor, soot, fumes, acids, alkalis, chemicals, pathogens, poisons, and waste. Waste includes materials to be recycled, reconditioned or reclaimed, and wastewater runoff from fracking activities conducted on or adjacent to your "premises".

63. **"Power quality"** (PROPERTY) means the conditions that allow electrical systems or equipment to operate as intended by limiting voltage fluctuations and other power influences that would adversely affect the operational performance and/or reduce the reliability, or the life-span of the electrical system.

64. **"Premises"** (PROPERTY, GENERAL LIABILITY) means the premises shown in Description of Premises on the "Declarations".

65. **"Products-completed operations hazard"** (GENERAL LIABILITY) means:

   a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned.

   The "bodily injury" or "property damage" must occur away from property you own or rent, or after you have relinquished possession of "your product" if your operation includes the selling, handling, or distribution of "your product" for consumption on property you own or rent.

   b. "Your work" will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed;

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site;

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

   c. This hazard does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

   (2) The existence of tools, uninstalled equipment, or abandoned or unused materials; or

   (3) Products or operations for residential condominiums and any other classification in this coverage part or in our manual of rules that includes products or completed operations.

66. **"Professional service"** (GENERAL LIABILITY) means:

   a. Legal, accounting, or advertising services;

   b. Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications;

   c. Supervisory, inspection, or engineering services;

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

**Definitions**

   d.  Medical, surgical, dental, x-ray, or nursing services or treatment;

   e.  Any health service or treatment;

   f.  Any cosmetic or tonsorial service or treatment;

   g.  Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

   h.  Ear or body piercing services; and

   i.  Services in the practice of pharmacy.

67. **"Property damage"** (GENERAL LIABILITY) means:

   a.  Physical injury to tangible property, including all resulting loss of use of that property; or

   b.  Loss of use of tangible property that is not physically injured.

With regard to "property damage", loss of use of tangible property not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

68. **"Ratable limit"** (PROPERTY) means that portion of the replacement cost of "covered property" on which a premium charge is based.

69. **"Reasonable extra cost"** (PROPERTY) shall mean the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation.

70. **"Securities"** (PROPERTY, GENERAL LIABILITY) means negotiable and nonnegotiable instruments or contracts representing but not including either "money" or other property and includes:

   a.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b.  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you.

With regard to "securities", occurrence means an:

   a.  Act or series of related acts involving one or more persons; or

   b.  Act or event, or a series of related acts or a series of related acts or events not involving any person.

71. **"Sidetrack agreement"** (GENERAL LIABILITY) means an agreement between a railroad and a second party under which the railroad furnishes sidetrack facilities on the latter's premises, the second party releasing the railroad from liability for damages or assuming the railroad's liability for damages to others on account of the maintenance or operation of the sidetrack.

72. **"Sinkhole collapse"** (PROPERTY, GENERAL LIABILITY) means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone, dolomite, or similar rock formations. Including:

   a.  The cost of filling sinkholes; or

   b.  Sinking or collapse of land into man-made underground cavities or landfill.

73. **"Source material"** (GENERAL LIABILITY) means the meaning given to it in the Atomic Energy Act of 1954 or in any amendatory law.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Definitions

74. **"Special nuclear material"** (GENERAL LIABILITY) means the description given to it in the Atomic Energy Act of 1954 or in any amendatory law.

75. **"Specified causes of loss"** (PROPERTY) means the following: fire; lightning; explosion; wind or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment;; "volcanic action"; falling objects; weight of snow, ice, or sleet; "water damage".

76. **"Spent fuel"** (GENERAL LIABILITY) means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in "nuclear reactor".

77. **"Subsidiary(ies)"** (GENERAL LIABILITY) means any organization that is controlled by any entity of yours through ownership of more than 50% of the outstanding voting stock.

78. **"Suit(s)"** (GENERAL LIABILITY) means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies are alleged.

    "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

79. **"Swimming pools"** (PROPERTY) means swimming pools and the water they contain.

80. **"Temporary worker(s)"** (PROPERTY, GENERAL LIABILITY) means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term workload condition.

81. **"Theft"** (PROPERTY, GENERAL LIABILITY) means any act of stealing.

82. **"Tort liability"** (GENERAL LIABILITY) means a liability that would be imposed by law in the absence of any contract or agreement.

83. **"Unit(s)"** (PROPERTY, GENERAL LIABILITY) means each portion of the real property, designed for separate ownership and occupancy, which is enclosed by the boundaries described in a. below and which contains the property described in b. below:

    a. Boundaries:

        (1) Each plane formed by the innermost surfaces of the studs in each wall which is also a demising wall of the building or a wall between other similarly enclosed portions;

        (2) Each plane formed by the innermost surface of each door and window and of its respective frames, sills and hardware all which connect the enclosed portion to adjacent common elements, limited common elements or the exterior of the building; and

        (3) Each plane formed by the innermost surface of each grill or register covering exhaust fans or ventilation ducts;

        (4) Each plane formed by the surfaces of any furring which, with regard to each furring strip, is that surface facing the enclosed portion, as extended around utility shafts and columns containing pipes, ducts, wires, conduits, chutes, mechanical chases, structural elements and flues that are either common element or limited common elements; and,

        (5) Each plane formed by the innermost surfaces of the beams or joists of the ceilings and floors of such enclosed portions which are also ceilings and floors of the building or of other, similar enclosed portions.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Definitions

b. The following property, wholly enclosed by or contained inside the boundaries described in a. above, which is both permanently installed and dedicated to the exclusive service of the enclosed portion:

  (1) All machinery, equipment, appliances, fixtures, and similar property such as:

  (a) Kitchen equipment, exhaust fans, lighting devices, outlets, and wiring systems;

  (b) Plumbing fixtures, and fixtures and other exposed parts of systems that provide heating, ventilation, and air conditioning; and,

  (c) Fixtures and other exposed parts of protective safeguards systems including, without limitation, fire, intrusion, smoke and heat protection, and detection systems; and

  (2) All walls, floors, ceilings, partitions, columns, and dividers, lath, wallboard, plasterboard, plaster, paneling, molding, tiles, wallpaper, paint, finished flooring and their finished surfaces; and,

  (3) Pipes, ducts, wires, cables, conduits, and similar property.

84. **"Unmanned aircraft"** (GENERAL LIABILITY) means an aircraft that is not:

  a. Designed;

  b. Manufactured; or

  c. Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

85. **"Valuable papers and records"** (PROPERTY) means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps, or mortgages.

However, "valuable papers and records" does not mean records of accounts receivable, "media", "money" or "securities", converted "data", programs or instructions used in your data processing operations, including the materials on which the "data" is recorded.

86. **"Volcanic action"** (PROPERTY) means:

Direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

  a. Airborne volcanic blast or airborne shock waves;

  b. Ash, dust, or particulate matter; or

  c. Lava flow.

However, "volcanic action" does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to "covered property".

87. **"Volcanic eruption(s)"** (PROPERTY, GENERAL LIABILITY) means volcanic eruption, effusion, and explosion.

88. **"War"** (PROPERTY, GENERAL LIABILITY) means war, whether or not declared, including civil war, insurrection, rebellion, or revolution.

89. **"Waste"** (GENERAL LIABILITY) means any waste material:

  a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

  b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## Definitions

90. **"Water damage"** (PROPERTY) means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

91. **"Your product"** (GENERAL LIABILITY) means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

   "Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b. The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

92. **"Your work"** (GENERAL LIABILITY) means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts, or equipment furnished in connection with such work or operations.

   "Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

   "Your work" will be deemed completed at the earliest of the following times:

   a. When all of the work called for in your contract has been completed;

   b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

EXHIBIT A

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Travis Hilton on behalf of Travis Hilton
Bar No. 24126304
thilton@sjjlawfirm.com
Envelope ID: 94371349
Filing Code Description: Petition
Filing Description: PLAINTIFF'S ORIGINAL PETITION
Status as of 11/19/2024 3:05 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Travis Hilton | | thilton@sjjlawfirm.com | 11/15/2024 6:12:48 PM | NOT SENT |
| Alex Jadin | | ajadin@sjjlawfirm.com | 11/15/2024 6:12:48 PM | NOT SENT |
| Vivian MVaisanen | | vvaisanen@sjjlawfirm.com | 11/15/2024 6:12:48 PM | NOT SENT |

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

After printing this label:
CONSIGNEE COPY · PLEASE PLACE IN FRONT OF POUCH
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

